In the Matter of HARVEY U., Appellant. VETERAN'S ADMINIS-
TRATION MEDICAL CENTER, Respondent.

Third Department, April 28, 1986

### APPEARANCES OF COUNSEL

*James T. Donnelly (David M. LeVine* of counsel), for appel-
lant.

*Gold & Symansky (Barry A. Gold* of counsel), for respon-
dent.

## OPINION OF THE COURT

LEVINE, J.

Respondent is a 36-year-old male who was transferred to petitioner hospital on or about January 9, 1986, suffering from a gangrenous condition of both feet as the result of third degree frostbite. For about one month prior to seeking medical treatment, he had been living in a station wagon in northern Saratoga County after his eviction from his home. Respondent was receiving Social Security benefits based upon a mental disability and has a history of psychiatric hospitalizations. Shortly after his admission, petitioner's staff physicians recommended amputation of portions of both feet. When respondent refused to consent to these procedures and nearest relatives declined to become involved in the decision making on the issue, petitioner brought this proceeding seeking judicial authorization to perform the amputations based upon respondent's mental incompetency.

Respondent's present physical condition was described at the hearing by petitioner's chief of surgery. Substantial portions of respondent's feet are dead, gangrenous and mummified. There is localized infection. The level of demarcation between normal and affected tissue has widened and the normal tissue in these areas has become red and swollen. There is no possibility that the dead tissue will revitalize or heal. Without surgical amputation, the dead tissue will ultimately fall off, leaving exposed bone which in turn will eventually crack and fall away. It is possible that the resultant wounds will heal, but in all likelihood there will be a nonhealing stump at least on the right foot. The right foot will not be weight bearing and will continue to be the source of severe pain. Although no life-threatening infection presently exists, the failure to amputate substantially enhances the risk of generalized infection, the development of "wet" gangrene, requiring more serious amputations and may possibly lead to death. The risks of surgery would be small. The operation would leave respondent with the use of his left foot, but require a prosthetic device for the right leg to enable him to walk. The surgery would accelerate the rehabilitation process for maximum ambulatory functioning.

The evidence of respondent's mental condition consisted of the testimony of a treating staff psychiatrist and of a court-appointed psychiatrist who examined respondent at the time of the hearing, and petitioner's records of respondent's hospitalization. Both psychiatrists diagnosed respondent as a paranoid schizophrenic, manifested generally in his belief that the

treating physicians are trying to hurt him, a loosening of thought association and idiosyncratic thinking. He was intermittently verbally abusive and threatening to hospital staff, interfered with the application of his dressings and refused intravenous injections of antibiotics and the taking of blood samples. For a period of time he refused to take psychotropic drug medication, during which he suffered hallucinations of being attacked by scissors and heard the voices of his deceased parents through the radio. Both psychiatrists opined that respondent lacked any realistic insight into the nature of his condition or capability of understanding the risks and benefits of surgery or the consequences of his refusal to accept treatment. Respondent testified on his own behalf. At the conclusion of the hearing, Supreme Court found that respondent was mentally incompetent to give or withhold consent to the recommended surgery and granted petitioner's application for authorization to perform the amputation. This appeal followed.

In our view, petitioner has met its burden of establishing by clear and convincing evidence that respondent was incompetent to give or refuse consent (see, Matter of Storar, 52 NY2d 363, 379, cert denied 454 US 858; Matter of Harris v Roberts, 91 AD2d 1141, 1142); that is, respondent is incapable of making an informed, rational decision on the basis of the risks and benefits of the surgery (see, Public Health Law §§ 2504, 2805-d; Canterbury v Spence, 464 F2d 772, 780, cert denied 409 US 1064) and comprehending the seriousness of his condition and the consequences of not having the procedure performed (Matter of Hanes v Ambrose, 80 AD2d 963; New York City Health & Hosps. Corp. v Stein, 70 Misc 2d 944, 946). The testimony of both psychiatric experts, as well as that of respondent himself, convincingly established that, although respondent knows his feet have been injured and understands what is entailed in an amputation, his psychotic fears and beliefs have resulted in a self-denial of the severity of his condition and the likely, and possibly even life-threatening, consequences of failing to undergo surgery. Despite the uncontested medical proof to the contrary, he is certain that his condition will get better rather than worse and that although his blackened skin may fall off, the feet underneath will be usable. His testimony exhibited a wholly irrational trust in the natural healing of his affliction and a belief that his hospitalization and treatment have only been for "experimental" purposes. Supreme Court also properly found that the

benefits to be derived from surgery clearly outweighed any risks, despite the possible adverse effects on his mental state if the operation is performed against his will.

Respondent's arguments on appeal that petitioner failed to meet its evidentiary burden are not persuasive. Principally, respondent relies upon two items of evidence in the record. The first of these was the concession made in the testimony of the attending psychiatrist that he would have accepted as competent respondent's consent to the surgery, while at the same time maintaining that respondent was incompetent in refusing to give such consent. This seemingly logical inconsistency is, however, dispelled by examining the psychiatrist's testimony in its context, which reveals that it was not respondent's refusal to consent alone which formed the basis for the opinion expressed, but rather, the absence of any relation to reality in the reasons respondent gave for that refusal. A similar rationale was expressed by the court-appointed psychiatric expert in arriving at the conclusion that respondent was incompetent to refuse to consent. This case is, thus, quite distinguishable from those wherein a patient, capable of rationally assessing his chances and choices, decides upon a fatalistic course for religious or other reasons derived from actual life experiences, and whose wishes must be respected despite their conflict with the judgment of medical professionals *(see, Matter of Hanes v Ambrose, supra; Lane v Candura,* 6 Mass App 377, 376 NE2d 1232; Byrn, *Compulsory Lifesaving Treatment for the Competent Adult,* 44 Fordham L Rev 1).

Respondent's alternative argument on the inadequacy of the proof is derived from a report found in the medical records of an examination by another staff psychiatrist made at the time of respondent's admission, which expressed the finding that respondent was "fully alert, oriented and based in reality". The report, however, does not record that respondent had refused to consent to surgery at the time of that examination, but "want[ed] to wait a few days to see if his feet improve [without] recourse to surgery". Thus, it is of scant probative value as to whether respondent was incompetent at the time of his subsequent refusal to consent. In any event, Supreme Court credited the expert testimony at the hearing that respondent's mentally incompetent condition was very likely to have been unchanged throughout his period of hospitalization. Such assessment of the credibility of witnesses by the nisi prius court is entitled to deference upon appellate review *(Amend v Hurley,* 293 NY 587, 594).

The only other point raised by respondent meriting discussion concerns the admissibility of petitioner's records of hospitalization from his admission to the date of the hearings. Supreme Court received the entire record in evidence except for its exclusion of those portions containing entries by persons under no business duty to make them. The records were admitted over respondent's objection that they contained statements of opinion not covered by the business record rule (CPLR 4518 [a]). Respondent has not cited to the specific entries objected to. Our review of the exhibit, insofar as it pertains to this issue, discloses, however, that it indeed contains entries made by (1) attending staff physicians and psychiatric social workers setting forth diagnoses of respondent's mental condition, and (2) treating nurses and other health professionals describing their impressions from direct observation of respondent concerning such things as his demeanor, mood, appropriateness of speech, state of awareness and insight. Clearly, each such entry is directly related to the "business of a hospital * * * to diagnose and treat its patients' ailments" *(Williams v Alexander,* 309 NY 283, 287). While this court at one time expressed a contrary view *(Rodriguez v Zampella,* 42 AD2d 805), the prevailing weight of authority supports the admissibility of hospital records containing diagnoses and assessments of a patient's mental or physical condition by apparently qualified professionals when, as here, the records otherwise meet the requirements of the business entry rule *(see, People v Kohlmeyer,* 284 NY 366, 369-370; *People v Davis,* 95 AD2d 837, 838; *Pekar v Tax,* 43 AD2d 957; *People v Richardson,* 38 AD2d 990, 991; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4518.09). Moreover, with the exception of the report of the initial psychiatric examination upon respondent's hospital admission (which, as already discussed, respondent relies upon), the entries objected to were entirely cumulative of the expert testimony adduced at the hearing and could not have had any significant influence on Supreme Court's conclusions.

Nor did Supreme Court err in considering entries in the record concerning communications from respondent's relatives that they declined to act on respondent's behalf in consenting to the operation. The utterance of those statements itself was relevant to matters at issue in petitioner's application and, hence, the hearsay rule was inapplicable (Richardson, Evidence § 204, at 180-181 [Prince 10th ed]).

We have examined respondent's remaining arguments and find them similarly insufficient to require reversal.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Order affirmed, without costs.