■ LARK HEFTE, Appellant, v HOWARD T. BELLIN, Respondent, et al., Defendants.—Judgment, Supreme Court, New York County (Eugene Wolin, J.), entered October 1, 1986, upon a jury verdict in favor of defendant-respondent, unanimously reversed, on the law and the matter remanded for a new trial, without costs.

In 1977, appellant underwent cosmetic surgery, performed by respondent, to augment the size of her breasts. The crucial issue at trial was whether the two implants inserted by respondent in appellant's breasts were the same size and shape. The nurse who assisted in the 1977 operation by recording all information about the procedure on the operating room worksheet, testified that she wrote the style numbers for the implants on the worksheet after she removed them from their packages. The worksheet indicated that the two implants bore different style numbers.

Following the operation appellant experienced pain in her left breast and complained that her breasts were asymmetrical. Several months after the operation, the left breast had hardened due to a membraneous capsule which had formed around the implant. In April 1978, respondent treated appel-

lant for this "encapsulation" and told her that if she were still concerned about the asymmetry he would redo the left breast by lowering it, without charge.

In June 1978 appellant again underwent breast surgery. During this procedure, respondent found that the left breast implant was approximately 1.5 centimeters higher than the right. Respondent made some adjustments and reinserted the same implants in appellant. However, the left breast was still slightly high. Respondent then reopened the incision he had just sutured and removed more tissue under the chest wall so that the left implant would slide down and make the two breasts appear symmetrical. Following surgery, appellant again experienced hardening of the left breast and pain on her left side. She continued under respondent's care until March 1980.

In December 1981 appellant underwent a third breast operation to relieve the pain and hardening in her left breast, and to remove the scars and correct the asymmetry. Dr. Gerard Acker, who performed the surgery, removed the implants inserted by respondent. In his written report of this procedure, Dr. Acker noted: "the left siliconized breast prosthesis was removed. It was quite dissimilar, both smaller, as well as less oblong than that of the right."

Appellant's attempts to have this report introduced in evidence were frustrated by the fact that the certified copy of the 1981 hospital record, which had been delivered to the court, had been inadvertently destroyed by the court clerk. The hospital where Dr. Acker had performed the operation had since closed due to bankruptcy and no copy of Dr. Acker's report could be found in the hospital records stored on microfiche. A copy of the report, however, was among the office records submitted by Dr. Acker pursuant to a subpoena duces tecum. Neither Dr. Acker nor his office manager, Robert Blum, who certified the office records, appeared in court to testify, although they were both subpoenaed by appellant.

When appellant's counsel requested that the court issue a warrant for Mr. Blum, the court refused stating: "I'm not going to take some underling in an office, instead of a doctor who doesn't want to come to court." When counsel requested that the court sign a warrant for Dr. Acker, the court refused stating "I don't like to summon a doctor to court." We find that the court's refusal to consider the issuance of a warrant for these witnesses was, under the circumstances, an abuse of discretion.

A report made in the ordinary course of a doctor's medical practice is admissible in evidence as a business record once the requisite statutory foundation had been laid (CPLR 4518 [a]; *Wilson v Bodian,* 130 AD2d 221, 231 [2d Dept 1987].) The report in question was a factual summary of Dr. Acker's actions and observations during the 1981 surgical procedure. This is not a case in which the evidence offered was inadmissible because it consisted of the doctor's opinion and diagnosis, expert proof. *(See, Rodriguez v Zampella,* 42 AD2d 805 [3d Dept 1973]; *but see, Matter of Harvey U.,* 116 AD2d 351, 355 [3d Dept 1986].)

In order to lay the foundation for the doctor's business record, appellant was required to call a witness with personal knowledge of the doctor's business practices and procedures *(Sabatino v Turf House,* 76 AD2d 945, 946 [3d Dept 1980]; *Matter of Brown v Murphy,* 43 AD2d 524, 525 [1st Dept 1973]). Consequently, the testimony of either Dr. Acker or Mr. Blum was required to lay a foundation for evidence which was directly relevant to a key issue in appellant's case. While CPLR 2308 (a) leaves the decision whether to issue a warrant for a witness to the discretion of the court, where a witness' testimony is not only relevant but necessary to a party's case, a warrant should issue when that witness does not respond to a judicial subpoena. Having rejected, out of hand, counsel's request to compel the appearance of Dr. Acker, the court compounded the error by giving a "missing witness" charge regarding him to the jury, over appellant's objection. *(See, Byczek v City of New York Dept. of Parks,* 81 AD2d 823 [2d Dept 1981] [court may determine whether party's explanation for not calling a witness is sufficient to negate unfavorable inference which a jury might otherwise be warranted in making].) We therefore reverse and remand for a new trial. Concur—Sullivan, J. P., Ross, Milonas and Rosenberger, JJ.