■ STEVEN D. CRISCI, SR., et al., Appellants, v ROBERT SADLER et al., Respondents. [676 NYS2d 646] —In an action to recover damages for medical malpractice, the plaintiffs appeal from a

judgment of the Supreme Court, Orange County (Slobod, J.), entered May 15, 1997, which, upon a jury verdict, is in favor of the defendants and against them, dismissing the complaint.

Ordered that the judgment is reversed, on the law, the complaint is reinstated, and a new trial is granted, with costs to abide the event.

On July 11, 1992, the infant plaintiff, then aged 26 months, sustained a supracondylar fracture of the left elbow, and was treated by the defendant Robert Sadler, an orthopedic surgeon. At the time of trial over four years later, he was suffering from a cubitus varus angulation deformity of 30 degrees which could only be corrected by surgery once the bone growth was completed.

The plaintiffs contended that the infant plaintiff's condition was the result of Dr. Sadler's failure to perform a proper reduction of the fracture. The infant plaintiff's father testified that the arm looked "way out of whack" when the splint was removed, and his mother noted that the arm "did not look right; it looked deformed" at that time.

According to the plaintiffs' expert, Dr. Richard Goodman, 30 degrees of angulation remained after Dr. Sadler purportedly performed the reduction, and that angulation never changed. Dr. Goodman's testimony was corroborated by the testimony of the infant plaintiff's treating physician Dr. Robert Christofaro, who ordered additional X rays in March 1993, and determined that the angulation of 30 degrees "was present at the time of the injury and * * * will stay the same until or if the family elects to have it corrected".

The defendants, on the other hand, contended that the deformity was the result of injury to the growth plate which resulted in uneven bone growth over a four-year period. According to the defendants' experts, the angulation present after the bone healed was only between 5 and 7 degrees, which would not have been visible to an untrained observer. The defendant Dr. Sadler testified that since the five-degree angulation present in August 1992 would not have been noticeable to an untrained eye, he probably brought the condition to the attention of the infant plaintiff's parents. Dr. Sadler further testified that the X rays which Dr. Christofaro had taken in March 1993 indicated that the bone had healed "absolutely straight".

The plaintiffs sought to introduce into evidence a photograph of the infant plaintiff allegedly taken on his third birthday in May 1993, showing a marked deformity of the left elbow. Their application was denied for reasons not stated in the record. The photograph was probative of when the deformity arose. It

tended to disprove other testimony that the abnormal growth occurred over a four-year period, and corroborated the plaintiffs' evidence that the deformity was present shortly after the injury (*see, Axelrod v Rosenbaum*, 205 AD2d 722; *Schuster v Town of Hempstead*, 130 AD2d 481). Therefore, the exclusion of the photograph was error.

The plaintiffs also sought to lay a foundation for the admission of Dr. Christofaro's medical records and report as business records, but the court found that material inadmissible. It is well settled that "[a] report made in the ordinary course of a doctor's medical practice is admissible in evidence as a business record" (*Hefte v Bellin*, 137 AD2d 406, 408; *see, Wilson v Bodian*, 130 AD2d 221, 231). Therefore, the exclusion of that evidence was error.

Dr. Christofaro's testimony as to the infant plaintiff's medical history, including the parents' claim that once the immobilization device was removed from the infant's arm, it looked "crooked", was also ruled inadmissible. It is well settled that a treating physician "may testify to the history obtained from the patient if it is germane to diagnosis and treatment" (*Scott v Mason*, 155 AD2d 655, 657; *see, Wilson v Bodian*, *supra*). Thus, excluding Dr. Christofaro's testimony as to the infant's medical history was error.

Since the question of when and how the infant plaintiff's deformity arose was disputed, the exclusion of evidence in support of the plaintiffs' position cannot be deemed harmless (*see Gomez v City of New York*, 215 AD2d 353; *see generally, People v Smith*, 63 NY2d 41, 64-65, *cert denied* 471 US 1049).

Accordingly, the judgment is reversed, and the plaintiffs are granted a new trial. Rosenblatt, J. P., O'Brien, Krausman and Goldstein, JJ., concur.