■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN R. DIXON, Appellant.—Appeal from a judgment of the County Court of Madison County, rendered November 30, 1977, upon a verdict convicting defendant of the crime of rape in the third degree. Defendant was the bus driver for Alternatives Industry, an organization in Oneida, New York, which employed persons who were mentally or physically handicapped. One of the employees was Rosalie Miller who was 28 years of age and was a regular passenger on defendant's bus. On May 19, 1977, the defendant altered his normal bus route so that he was alone with the victim, Rosalie Miller, on the trip home. He stopped the bus and proceeded to have sexual intercourse with her, withdrawing prior to the climax and then masturbating. Defendant then drove Rosalie home. Four days later Rosalie told her mother about this incident, and the mother contacted authorities at Alternatives Industry who fired the defendant and reported the matter to the New York State Police. The defendant was arrested on May 25, 1977, and confessed to the incident in a written statement given to an investigator of the New York State Police. The main issue on appeal is whether Rosalie was incapable of consent to engage in sexual intercourse with the defendant. Section 130.25 of the Penal Law provides, in part, as follows: "A male is guilty of rape in the third degree when: 1. He engages in sexual intercourse with a female who is incapable of consent by reason of some factor other than being less than seventeen years old". Section 130.05 of the Penal Law provides, in subdivision 3, as follows: "3. A person is deemed incapable of consent when he is: (a) less than seventeen years old; or (b) mentally defective; or (c) mentally incapacitated; or (d) physically helpless." The

People called several witnesses to testify concerning the mental capacity of Rosalie Miller. Dr. Nancy Naffziger, a staff psychologist in the Madison County Mental Health Department, testified that she had administered a Wechsler Adult Intelligence Test to Rosalie five days before the trial began. This test showed Rosalie to have an IQ of 61, which placed her in the bottom 1% of the population in terms of mental capacity. Dr. Naffziger further testified that Rosalie had the mental age of approximately an 11-year-old child, and that she had childish conceptions of a boyfriend-girlfriend relationship, of marriage, and of sex, and she defined making love as kissing and hugging and being happy, but not as having sex. Barbara McDermott and Rebecca Rector, two of Rosalie's rehabilitation counselors at Alternatives Industry, testified that they did not think Rosalie was capable of functioning on her own in society. They described Rosalie's need for constant supervision to perform properly the simplest of tasks and also described her personality as they had come to know it. Rosalie was described as pleasant and also anxious to please persons of authority. Defendant contends that the evidence supports the conclusion that Rosalie was capable of consenting and understood to some extent the nature of her actions. Defendant did not testify in his own behalf. The trial court charged that "In order for a person to be capable of giving her consent, it requires the exercise of intelligence, based upon knowledge of the significance of such consent and of its moral quality. It also presupposes the mental capability to form an intelligent opinion on the subject, with an understanding of the act, an understanding of its nature, and an understanding of its possible consequence. An ability to appraise or to understand is, of course, a qualitative matter. It includes being substantially able to understand what she was doing. This includes more than just the knowledge of its physiological nature. It may include the moral quality of the act." In *People v Easley* (42 NY2d 50), the Court of Appeals affirmed a conviction of the crime of rape in the third degree when the victim over the age of 17 years was described in the testimony of a psychologist as having an IQ in the 45-54 range, and her conceptual comprehension of sexual relations was at the level of an eight-year-old child. The court stated as follows (pp 56-57): "Whether there is an awareness of the social or other cost of one's conduct is a legitimate area of inquiry in determining whether one is so mentally defective that the protective shield of section 130.05 of the Penal Law is invoked. Such inquiry should of course include the question of whether the person whose mentality is being judged has insight into the consequences of conduct for which the law exacts criminal penalties. But that is not enough. The law does not mirror all prevailing moral standards (Schwartz, Moral Offenses and the Model Penal Code, 63 Col L Rev 669). Therefore, there also needs to be inquiry as to whether there is a capacity to appraise the nature of the stigma, the ostracism or other noncriminal sanctions which society levies for conduct it labels only as immoral even while it yet struggles to make itself articulate in law (see Cardozo, Paradoxes of Legal Science, pp 17, 41-42). Put in terms of this case, in its determination of Ms. Waller's capacity to appraise the sexual act, its significance and its consequences, the jury may very well have been required to consider the moral quality of the act as it would be measured by society and to assess as well her ability to appreciate that fact (cf. *People v Wood,* 12 NY2d 69, 76-77; *People v Schmidt,* 212 NY 324)." The testimony produced at trial, taken as a whole, supports the verdict of the jury that Rosalie Miller could not appraise the nature of her conduct and was, therefore, mentally defective and incapable of consenting to sexual intercourse. The trial court clearly instructed the jury that it

could not infer guilt by reason of the fact that the defendant did not testify in his own behalf (cf. *People v Reeves,* 57 AD2d 1015). Judgment affirmed. Mahoney, P. J., Greenblott, Sweeney, Kane and Staley, Jr., JJ., concur.