■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STANLEY G. CRATSLEY, Appellant. [615 NYS2d 463] —Yesawich Jr., J. Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered March 8, 1993, upon a verdict convicting defendant of the crime of rape in the third degree.

On Monday, July 29, 1991, the victim in this case, a mentally retarded woman who is employed at the Steuben Association of Retarded Citizens, reported to Susan Kent, a program manager at the Association, that defendant had engaged in sexual intercourse with her the previous weekend. Questioned about the incident, defendant admitted having had intercourse with the victim, but claimed that it was at her instigation and with her consent. Defendant was thereafter charged with rape in the third degree (Penal Law § 130.25 [1]). At trial, the key issue was whether the victim was, in fact, incapable of con-

sent, due to her mental defect *(see,* Penal Law § 130.00 [5]; § 130.05 [3] [b]).

In support of their position, the People presented the testimony of Kent, the victim's mother and stepfather, and the police investigator who had questioned defendant and prepared his written statement. The victim was permitted to give unsworn testimony because County Court, while convinced that the victim was able to comprehend the difference between truth and falsehood, did not find that she understood the significance of an oath. No witnesses were called by the defense. Found guilty and sentenced to an indeterminate term of 1⅓ to 4 years' incarceration, defendant appeals.

Initially, defendant contends that because there was no expert testimony establishing the victim's inability to appreciate the nature of her sexual conduct, the evidence proffered to sustain the conviction was insufficient. We disagree. In other contexts, it has been held that mental capacity may be determined by the jury from circumstantial evidence, such as that presented here *(cf., Matter of Lee v County Ct.,* 27 NY2d 432, 442, *cert denied* 404 US 823). We see no reason to resort to a different standard in this instance.

The victim's inability to spell her last name, or to correctly state her age, provided direct evidence of her cognitive limitations. More probative were her answers to a series of questions bearing directly on her understanding of sexual conduct, in which she indicated that although she takes birth control pills, she does not know where babies come from, or what it means to be pregnant, and that she has no knowledge of AIDS or venereal disease. Coupled with the testimony of Kent and the victim's parents, which delineated the general bounds of the victim's comprehension, this evidence furnished sufficient support for the jury's conclusion that she did not have the ability to understand the nature of the sexual act, including its consequences, both physical and moral *(see, People v Easley,* 42 NY2d 50, 56; *People v Dixon,* 66 AD2d 971, 972).

Unavailing also is defendant's assertion that it was error to permit Kent, who is not trained as a psychiatrist or psychologist, to testify as to the extent of the victim's retardation. Kent was qualified, through her training and experience, to evaluate the abilities and daily functioning of mentally retarded people, and she had observed the victim on a daily basis for two months prior to the incident. Her testimony was, for the most part, similar to that given by the counselors in *People v Dixon (supra,* at 972), who testified that they did not

believe that the victim in that case was "capable of functioning on her own in society" and described her performance of various tasks, as well as her personality.

Nor is there force in defendant's argument that it was improper for County Court to permit Kent to testify as to the IQ of the victim, which was taken from a psychological evaluation report of the kind ordinarily relied upon by persons engaged in Kent's type of work, and as to the meaning of the IQ score. By virtue of her occupation and experience, Kent could be expected to know the meaning of the term IQ, and to have some basic understanding of the relationship between a person's IQ and his or her ability to carry out daily functions. County Court did not abuse its discretion in permitting Kent to testify on these matters *(see, Meiselman v Crown Hgts. Hosp.,* 285 NY 389, 398-399).

Although defendant is correct in his assertion that the psychological evaluation report relied upon by Kent should not have been admitted as a business record, as there was no testimony elicited as to the circumstances of its creation *(see, Sabatino v Turf House,* 76 AD2d 945, 946; *but see, People v Hayes,* 98 AD2d 824, 825), this error was harmless for the report contained little, if anything, that was not conveyed to the jury by other means, either through the testimony of Kent and the victim's parents or by direct observation of the victim herself. Moreover, in view of County Court's comprehensive instructions to the jury, in which it clearly explained that an incapacity to consent cannot be assumed from the fact that a person is mentally retarded or very limited intellectually, and given the other testimony detailing the victim's level of functioning and the jury's opportunity to observe her directly, there is no significant probability that defendant would have been acquitted if the report had not been admitted *(see, People v Crimmins,* 36 NY2d 230, 242).

We have considered defendant's other arguments and find them lacking in merit or not warranting reversal.

Mikoll, J. P., Crew III, White and Weiss, JJ., concur. Ordered that the judgment is affirmed.