■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER M. ROGERS, Appellant. [938 NYS2d 677]—

McCarthy, J.

---

Defendant's conviction was not against the weight of the evidence. The People were required to prove that defendant engaged "in sexual intercourse with another person who is incapable of consent by reason of being mentally disabled or mentally incapacitated" (Penal Law § 130.30 [2]). The victim testified that she had sexual intercourse with defendant, he admitted to the police that he had sex with the victim, and DNA tests revealed a 99.99% probability that he is the father of the victim's child. The only disputed question is whether the victim is incapable of consenting to sex.

For purposes of Penal Law article 130, a person is mentally disabled if he or she "suffers from a mental disease or defect which renders him or her incapable of appraising the nature of his or her conduct" (Penal Law § 130.00 [5]). "The law does not presume that a person with mental retardation is unable to consent to sexual intercourse, and proof of incapacity must come from facts other than mental retardation alone" (*People v Cratsley*, 86 NY2d 81, 86 [1995] [citation omitted]; *accord People v Dean*, 70 AD3d 1193, 1194 [2010]). A psychologist testified that he conducted an IQ test and sexual competency evaluation of the victim. Her IQ is 68, which classifies her as developmentally disabled. Although the victim was able to work with her mother on a paper route and obtain her GED, both of her parents and the psychologist testified that the victim had learning deficits. Regarding her knowledge and understanding of sexual activity and consequences, the psychologist concluded that the victim functioned at a preteen level and her limited understanding rendered her "vulnerable to being in situations that could compromise her safety and her physical well-being related to sex acts." The victim was unaware of her pregnancy even at the point when she went into labor. This was consistent with her statement to the psychologist that she "ha[d] no clue" what the typical signs of pregnancy are, even though his evaluation took place several months after she had given birth. The jury also heard and saw the victim when she testified, providing an opportunity to assess her mental capabilities and level of understanding. Giving deference to the jury's credibility determinations, the weight of the evidence supports the jury's finding that the victim was incapable of consenting to sex (*compare People v Cratsley*, 86 NY2d at 88, *and People v Dixon*, 66 AD2d 971, 972-973 [1978], *with People v Dean*, 70 AD3d at 1195).

Defendant was not denied the effective assistance of counsel. While defendant asserts that counsel should have questioned the victim more extensively about her sexual competency, we

will not intrude on counsel's choice of a reasonable strategy regarding the manner of conducting a delicate cross-examination of a mentally disabled individual concerning rape allegations (*see People v Hemingway*, 85 AD3d 1299, 1303 [2011]). The record does not include information to support defendant's allegations that counsel failed to adequately prepare for trial or consider hiring an expert. Although counsel did not question the psychologist as to potentially divergent IQ scores, counsel did extensively cross-examine him regarding the evaluation and the victim's level of functioning due to her borderline IQ score. Considering the totality of representation, including the extensive cross-examination of the People's witnesses and the consistent defense theory that the victim was mentally capable of consenting to sexual activity, defendant received meaningful representation (*see People v Damphier*, 13 AD3d 663, 664-665 [2004]).

Mercure, A.P.J., Peters, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed.