■ JIANRONG WANG, Respondent, v SHAO KE et al., Appellants, et al., Defendant. [909 NYS2d 778]—

Mercure, J.P. Appeal from an order of the Supreme Court (Mulvey, J.), entered May 8, 2009 in Tompkins County, which, among other things, awarded plaintiff certain corporate profits against defendant Shao Ke.

In 2004, defendant Shao Ke incorporated Peace Food, Inc. for the purpose of acquiring and operating a Chinese restaurant in the City of Ithaca, Tompkins County. In addition to Ke, the initial shareholders in the corporation were George Wang, plaintiff and his wife, Peiling Xu, and defendants Runwen Li and Guoqiang Long, who were Ke's wife and brother-in-law. Xu was employed as a bookkeeper and cashier, Ke was employed as a manager, Li was employed as a cashier, and Long and George Wang were employed as chefs.

The parties' relationships deteriorated and, in 2005, plaintiff and Xu petitioned for judicial dissolution of the corporation. Xu subsequently transferred her interest in the corporation to

plaintiff, and Li, Long and George Wang purportedly sold their shares in the corporation to Ke. Plaintiff commenced this action alleging theft of corporate funds and seeking, among other things, an accounting by Ke.[1]

Following a nonjury trial, Supreme Court directed that Peace Food be dissolved and that the escrowed proceeds of the sale of corporate assets be distributed, and ordered Ke to file an accounting. After Ke filed the accounting, plaintiff objected and moved for partial summary judgment, among other things; Ke cross-moved for summary judgment on the issue of liability. Supreme Court denied Ke's cross motion and found that Ke failed to account for corporate revenue during the relevant period. The court reserved decision on the amount of the shortage pending a hearing, at the close of which the court concluded that plaintiff and Xu were the only bona fide shareholders of the corporation, and surcharged Ke $11,411.37 for counsel fees paid by the corporation, $234,581.46 for failure to account for corporate profits, and $70,000 for plaintiff's counsel fees incurred in this action. Ke and Li (hereinafter collectively referred to as defendants) now appeal.

Defendants challenge Supreme Court's determination to the extent that the court found that plaintiff and Xu were the sole shareholders of the corporation, and that they are liable for unaccounted revenue in the amount of $234,581.46. Defendants do not dispute that Ke owed the corporation a fiduciary duty and that he should be surcharged for inaccuracies in his accounting (*see generally Matter of Schnare*, 191 AD2d 859, 860 [1993], *lv denied* 82 NY2d 653 [1993]). Rather, defendants challenge Supreme Court's method of calculating the unaccounted-for funds and the court's finding rejecting their claimed ownership of 150 shares in the corporation. Specifically, defendants assert that in making these determinations, Supreme Court relied upon evidence—exhibits 8, 19 and 42—and expert testimony that should not have been admitted.

While the record does not reflect that Supreme Court relied upon exhibit 8, we agree with defendants that the court erred in admitting and relying upon exhibits 19 and 42, which were purportedly a memorandum documenting the corporation's repurchase of Long's shares and correspondence from Ke to potential purchasers containing corporate sales records that differ from those presented in Ke's accounting. These documents constitute hearsay, inasmuch as they were admitted for the truth of their contents, but the proper foundation for their

---

1. A receiver was appointed in the judicial dissolution action, and the assets of Peace Food were sold to a third party.

admission as business records under CPLR 4518 (a) was not established. Indeed, we note that "the indicia of reliability characteristic of a business record" is absent with respect to exhibits 19 and 42 (*People v Cratsley*, 86 NY2d 81, 91 [1995]; *see People v Ramos*, 13 NY3d 914, 914-915 [2010]; *People v Rogers*, 8 AD3d 888, 891 [2004]; *West Val. Fire Dist. No. 1 v Village of Springville*, 294 AD2d 949, 950 [2002]), and no other hearsay exception is asserted.

Thus, as defendants argue, Supreme Court erred in relying upon exhibit 42 in calculating the amount of unaccounted-for corporate revenue. We reject defendants' argument, however, that the court improperly admitted the testimony of Qi Wang regarding the expected profit margin of restaurants such as that operated by the parties. Defendants' current assertions that Qi Wang was called without prior notice and that Supreme Court improperly permitted the opinion testimony without qualifying Qi Wang as an expert are unpreserved. Inasmuch as Qi Wang's testimony "help[ed] to clarify an issue calling for professional or technical knowledge, possessed by the expert," it was properly admitted (*De Long v County of Erie*, 60 NY2d 296, 307 [1983]; *see Hudson v Lansingburgh Cent. School Dist.*, 27 AD3d 1027, 1028-1029 [2006]), and the alleged deficits in Qi Wang's qualifications go to the weight, not the admissibility, of the opinion (*see Plourd v Sidoti*, 69 AD3d 1038, 1039 [2010]).

Turning to Supreme Court's calculation of missing revenue and disregarding exhibit 42, we note that Ke conceded at trial that the gross revenues for the business in 2004 amounted to approximately $527,000. This is $336,727.32 more than the $190,272.68 reported in the accounting. Using the profit margin of 30% provided by plaintiff's expert, defendants should be surcharged with $101,018.20 for that period. Regarding the revenues for January 2005 through February 2006, plaintiff's expert also testified that the ratio of credit card sales to cash sales should be expected to remain constant. Ke's accounting, however, reveals a steep drop in the ratio of credit card sales— which were not susceptible to manipulation because they were automatically reported to the bank—to cash sales. As plaintiff contends, the figures for 2004 show an average ratio of 1 to 5 in credit card sales to cash sales; by the end of 2005, the ratio had inexplicably dropped to 1 to 2.3. Using Ke's reported credit card sales of $152,453.69 for the period of 2005 and the first two months of 2006, a 1 to 5 ratio yields $914,722.14 in gross revenue, $253,895.08 more than the $660,827.06 reported in the accounting. Assuming a 30% profit margin, defendants should be surcharged $76,168.52 for this period, bringing the total surcharge to $177,186.72.

Finally, with respect to defendants' remaining argument that Supreme Court improperly canceled the 150 shares in the corporation that Ke was either issued or acquired from Long and George Wang, defendants are correct that Supreme Court improperly relied upon exhibit 19—which was inadmissible as described above—in rejecting their claim that Ke, rather than the corporation, acquired Long's shares. In contrast, after weighing the probative force of the evidence presented and the inferences to be drawn therefrom, and deferring to Supreme Court's credibility determinations, we conclude that the record amply supports the court's determination that the shares initially issued to defendants were not supported by any consideration and that George Wang's shares were repurchased by the corporation. Thus, Ke should be credited only with 50 shares, or a one-half interest in the corporation.[2]

Rose, Malone Jr., Kavanagh and Stein, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reducing the surcharge for failure to account for corporate profits from $234,581.46 with interest to $177,186.72 with interest and crediting defendant Shao Ke with 50 corporate shares or a one-half interest in the corporation, and, as so modified, affirmed.

[2]. Although the corporation initially issued 200 shares, defendants' 50 shares were canceled and the corporation repurchased George Wang's 50 shares, leaving 100 shares outstanding, of which plaintiff owns 50.