OPINION OF THE COURT
Ann E. O’Shea, J.
Respondent’s motion to preclude the admission of records produced by Tangier Smith Elementary School is granted except to the extent indicated below. The reasons for the decision are set forth below.
In this proceeding, petitioner father seeks custody of the parties’ son, N.S., in modification of a prior order of this court, which awarded custody to respondent mother. The father and mother were both represented by counsel, and an attorney was assigned to represent N.S. (the Attorney for the Child or the AFC). After the father and mother rested, the AFC presented her witnesses. At the conclusion of their testimony, the AFC informed the court and counsel that she intended to submit records respecting N.S. subpoenaed but not yet received from Tangier Smith Elementary School (Tangier or the school), the school in which N.S. is presently enrolled for the 2010-2011 school year, and, except for those documents, she rested. The AFC was directed to provide copies of the school records to counsel for the father and mother once she received them, and I ruled that, subject to objection by the mother or father, the records would be admitted into evidence. After receiving and reviewing the records, the attorneys for the mother filed the instant motion to preclude their admission on the grounds that the records are inadmissible hearsay. The AFC and the father *343 argue the documents in question are business records admissible under CPLR 4518.
At the outset, it cannot be gainsaid that a child’s academic and social progress in school and the relative capacity of each parent to foster the child’s intellectual development are often major considerations in custody disputes (see e.g. Porges v Porges, 63 AD2d 712 [2d Dept 1978]), and evidence bearing on those issues is certainly relevant. The question presented here is not whether evidence pertaining to those issues is relevant and important; it. is how such evidence must be presented in court. It is that question which is addressed in this decision.
Hearsay is a statement made out of court offered for the truth of the fact asserted in the statement (see e.g. People v Goldstein, 6 NY3d 119, 127 [2005]; People v Huertas, 75 NY2d 487, 491-492 [1990]). Hearsay evidence as a general rule is inadmissible as a matter of due process and fundamental fairness, because the party against whom the hearsay statement is offered would otherwise be denied the opportunity to cross-examine the absent declarant to test his or her credibility or capacity to observe, remember or relate (see People v Settles, 46 NY2d 154, 166 [1978]). New York is relatively strict in applying the hearsay rule to exclude oral and written statements and even nonverbal conduct intended as an assertion (People v Charles, 137 Misc 2d 111 [Sup Ct, Kings County 1987]).
There are a number of exceptions to the rule, which permit the admission of hearsay if the proponent demonstrates that the evidence is reliable (Nucci v Proper, 95 NY2d 597, 602 [2001]). One such exception applies to business records made in the regular course of business that are offered for the truth of their contents. The “business records” exception is codified in CPLR 4518 (a), which provides in relevant part:
“Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”
The exception is premised on the notion that “records systematically made for the conduct of a business as a business are *344 inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant’s obligation is to have them truthful and accurate for purposes of the conduct of the enterprise” (People v Kennedy, 68 NY2d 569, 579 [1986]).
Before such records may be admitted, the proponent must establish specific foundational facts:
“first, that the record be made in the regular course of business — essentially, that it reflect a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business; second, that it be the regular course of such business to make the record (a double requirement of regularity) — essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record; and third, that the record be made at or about the time of the event being recorded— essentially, that recollection be fairly accurate and the habit or routine of making the entries assured” {id. at 579-580).
The School Records in General
The documents in question include records from two different schools: Tangier Smith Elementary School, the school N.S. currently attends, and Southeast Elementary School (Southeast), the school N.S. attended for part of the 2009-2010 school year. The record from each school includes attendance reports, report cards, teacher comments about N.S.’s progress and performance in the classroom, and reports of N.S.’s performance on “TerraNova” standardized tests, which were prepared, administered, and/or scored by a third party.
Ms. Toni L. Komorowski, the principal of Tangier, certified the documents as being “in the custody of and is the full and complete record of the condition, act, transaction, occurrence, or event of this Institution concerning N.S.” Ms. Komorowski’s certification further states that “this record was made in the regular course of business of this Institution and is [sic] in the regular course of business to make such record, and such record was made at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter.” The school records in question are documents that are maintained by Tangier. Southeast’s records were not “made in the regular course of business” of Tangier; they were “made” *345 by Southeast and transmitted to Tangier when N.S. transferred from Southeast to Tangier. Nor were the Southeast records created for use by Tangier (cf. People v Cratsley, 86 NY2d 81 [1995]; People v DiSalvo, 284 AD2d 547, 548 [2d Dept 2001]; Hefte v Bellin, 137 AD2d 406 [1st Dept 1988]). Tangier’s principal, Ms. Komorowski, was competent to certify that the records created by Tangier were made in Tangier’s regular course of business, that it is Tangier’s regular course of business to make such records, and that the entries made by Tangier personnel were made at or close to the time of the events memorialized in those records. However, she could not certify that Southeast’s records met the foundational requirements for admission as business records of either Southeast or Tangier.
Contrary to the AFC’s contention, the Southeast records do require separate certification (People v Cratsley, 86 NY2d 81, 90 [1995]; Lodato v Greyhawk N. Am., LLC, 39 AD3d 494, 495 [2d Dept 2007]; Standard Textile Co. v National Equip. Rental, 80 AD2d 911 [2d Dept 1981]). The fact that Tangier received Southeast’s records and presently maintains those records in its files does not endow Ms. Komorowski with the competence to certify Southeast’s documents or make them admissible as Tangier’s business records. As the Court in Lodato, quoting Cratsley (at 90) and citing Standard Textile, instructed,
“[t]he mere filing of papers received from other entities, even if they are retained in the regular course of business [of the recipient] is insufficient to qualify the documents as business records [because] such papers simply are not made in the regular course of business of the recipient, who is in no position to provide the necessary foundation testimony” (39 AD3d at 495 [citations and internal quotation marks omitted]).
Whether or not documents from a prior school are “typically” included in a child’s current school records does not render them admissible as business records of the current school. Nor is the testimony of Southeast’s principal that those records were transmitted to Tangier when N.S. transferred schools a proper certification of the Southeast records. Since the Southeast records are not Tangier records and were not properly certified, they are not admissible at all.
Tangier Report Cards and Teacher Comments
Whether children’s report cards and teacher comments should he admitted into evidence as business records appears to *346 be an issue of first impression — at least in New York.* For the following reasons, this court holds that they are not admissible.
As previously noted, the business records exception permits the admission of a written memorandum or record of “any act, transaction, occurrence or event” made relatively contemporaneously with the recorded incident (CPLR 4518). While recording teacher grades and comments may be part of the business of a school, the grades and comments themselves are clearly hearsay and do not constitute an “act, transaction, occurrence or event.” Rather, they are expressions of the subjective judgments of the teacher who determines or authors them, formulated over a period of time and based on any number of factors. Moreover, the business records exception is premised on the belief that “records systematically made for the conduct of a business as a business are inherently highly trustworthy . . . because the entrant’s obligation is to have them truthful and accurate” (People v Kennedy, 68 NY2d at 579). Subjective judgments, by definition, cannot be categorized as “true” or “false.” Their “trustworthiness” depends on the credibility and reliability of the author, which can only be measured through the live testimony, including cross-examination, of the author.
Other cases have addressed similar issues regarding the admissibility under the business records exception of records which include subjective assessments or opinions. For example, the Minnesota Supreme Court, in Matter of Welfare of L.Z. (396 NW2d 214, 220-221 [1986]), determined that school attendance records were admissible as business records to the extent they documented objective facts, such as whether a child was present or absent on a given day and what excuse, if any, was offered by the parent, because such records are generally reliable and not themselves susceptible to cross-examination. However, the court held that, to the extent the records reflected judgments as to the validity or merits of proffered excuse, they were not admissible: “the judgmental nature of this hearsay lacks sufficient reliability for admission and the judgmental data is inadmissible” (id. at 221; cf. Matter of Samantha K., 61 AD3d 1322, 1323-1324 [3d Dept 2009] [attendance records admissible because they did not include subjective assessments]). In Matter of Fortunato v Murray (72 AD3d 817 [2d Dept 2010]), the Appellate Division held that a doctor’s “day-to-day” entries in of *347 fice records are admissible as business records, but medical reports that contain the doctor’s opinions are not. The Third Department, in Rodriguez v Zampella (42 AD2d 805, 805 [1973]), held that a physician’s records that included his opinion and diagnosis “woven into his notations” should not have been admitted into evidence as a business record.
Although decided in the context of a Sixth Amendment challenge to hearsay evidence that would be admissible under Washington State’s evidentiary rules, the reasoning of the Supreme Court in Crawford v Washington (541 US 36, 61-62 [2004]) provides a related basis for excluding the report cards and teacher comments in question. In Crawford, the Supreme Court considered the admissibility of an out-of-court statement given by defendant’s wife to the police regarding the circumstances of defendant’s alleged stabbing of a third party. The wife’s testimony at trial was barred by the marital privilege, but, under Washington State’s rules, the privilege did not extend to a spouse’s out-of-court statements, and such statements were admissible at trial under a hearsay exception. The Court held that the Confrontation Clause of the Sixth Amendment precluded admission of the wife’s statement, despite the hearsay exception, because the statement was “testimonial.” The Court reasoned that the reliability of such evidence can only be tested in the crucible of in-court testimony and cross-examination (id. at 61-62). The Court did not define “testimonial,” specifically leaving the issue to determination by the lower courts (see e.g. People v Rawlins, 10 NY3d 136 [2008] [fingerprint comparison report prepared by police analyst concluding that the prints in question were defendant’s was inadmissible under the business record exception as it was testimonial in nature]; People v Meekins [decided with Rawlins] [technician’s report establishing a particular DNA profile was not testimonial and therefore admissible]; People v Freycinet, 11 NY3d 38, 41-42 [2008] [medical examiner’s report, redacted to eliminate the coroner’s opinions as to the cause of the victim’s death, was not testimonial]). While the holding of Crawford is not directly applicable to this proceeding, “the principles articulated therein caution against an expansive interpretation of traditional hearsay exceptions to curtail a litigant’s right to confront witnesses in civil proceedings involving important interests, such as the right to continued custody of one’s children” (Matter of Kyanna T., 19 Misc 3d 1114[A], 2007 NY Slip Op 52547[U], *9 [Fam Ct, Kings County 2007]).
*348 N.S.’s report cards and the teacher’s comments that accompany those cards are clearly testimonial in nature and should not be admitted under the business records exception to the hearsay rule. The Attorney for the Child or the father could have called N.S.’s teachers to testify as to the basis for the given grades and the accompanying comments, and the mother would have had the opportunity to cross-examine those teachers and test the reliability of those grades and comments. Such evidence cannot be admitted via the business record rule. However, there is no indication that Tangier’s attendance records include any judgmental or “testimonial” matter, and there is no specific objection raised as to those attendance records. Therefore, Tangier’s records reflecting N.S.’s attendance are admissible.
The TerraNova Test Reports
The TerraNova test reports are clearly hearsay and inadmissible for a number of reasons, including that they were not certified by anyone from TerraNova; they are not memoranda or records of any “act, transaction, occurrence or event” or proof of any such incidents; and, to the extent they are intended to demonstrate how N.S. is progressing in school, they are subjective judgments, opinions, or testimonial assessments of the creators of the tests, which can only be admitted and tested through live testimony.
Conclusion
For the foregoing reasons, the mother’s motion is granted to the extent that the Southeast and TerraNova records are excluded in their entirety, and the Tangier records are excluded except to the extent they include objective, contemporaneously entered records of the days N.S. was present or absent from school or late in arriving at school.

 The AFC may he correct that report cards and teacher comments are “typically” admitted into evidence in custody cases, but, as far as I could ascertain, no court has directly confronted or decided the issue.