Matter of Joseph M.W. (Blake) (2020 NY Slip Op 06583)





Matter of Joseph M.W. (Blake)


2020 NY Slip Op 06583


Decided on November 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CARNI, NEMOYER, AND CURRAN, JJ.


512 CA 19-00461

[*1]IN THE MATTER OF JOSEPH M.W., AN INCAPACITATED PERSON.  RYAN J. MULDOON, PETITIONER; CAYUGA COUNTY DEPARTMENT OF SOCIAL SERVICES, NEW YORK STATE OFFICE OF MEDICAID INSPECTOR GENERAL AND MICHAEL J. MCDERMOTT, RESPONDENTS-RESPONDENTS;
and
TERRY J. BLAKE, RESPONDENT-APPELLANT. 






SUGARMAN LAW FIRM, LLP, SYRACUSE (CORY J. SCHOONMAKER OF COUNSEL), FOR RESPONDENT-APPELLANT. 


 Appeal from an order of the Supreme Court, Cayuga County (Mark H. Fandrich, A.J.), entered February 1, 2019. The order, among other things, adjudged that respondent Cayuga County Department of Social Services had a valid claim (Medicaid lien) against the existing J.M.W. Supplemental Needs Trust corpus in the amount of $2,822,650.99. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by vacating the 12th and 17th adjudicatory paragraphs and the first, fourth, and fifth ordering paragraphs and as modified the order is affirmed without costs, and the matter is remitted to Supreme Court, Cayuga County, for further proceedings in accordance with the following memorandum: Terry J. Blake (respondent), the former trustee and a remainder beneficiary of a supplemental needs trust (SNT) created on behalf of her incapacitated brother, appeals from an order that, inter alia, determined that a Medicaid lien in an amount exceeding the value of the SNT corpus existed and directed respondent Michael J. McDermott, the trustee appointed after respondent (trustee), to use the SNT corpus to satisfy that lien following the payment of certain trust expenses. In 1998, respondent's brother, a developmentally disabled individual, had been rendered a quadriplegic after falling down a flight of stairs at a state-operated residential facility. Following the accident, medical malpractice and premises liability actions (tort actions) were commenced on behalf of respondent's brother, who received significant proceeds as a result of those actions. Meanwhile, the Cayuga County Health and Human Services Department interposed a personal injury Medicaid lien pursuant to Social Services Law § 104-b (Section 104-b lien) with respect to the cost of assistance and care that respondent's brother had received as a result of the accident.
After the Section 104-b lien was fully satisfied, the remaining proceeds from the tort actions were placed in the SNT, which allowed respondent's brother to remain eligible for Medicaid (see generally 42 USC § 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [2] [iii] [A]). Per its terms, the SNT would terminate upon the death of respondent's brother and, following an accounting, any existing Medicaid liens would be paid from the SNT corpus to the State "or its designated Social Services District" in an amount that was "the lesser of (1) the total amount of Medicaid payments made on behalf of [respondent's brother] for services that were provided, to the extent required by law; or (2) the entire balance of the [t]rust [e]state." Any remaining balance of the SNT's corpus would be paid to respondent, as a remainder beneficiary.
Respondent's brother died in 2016. Thereafter, petitioner, the Court Examiner, commenced this proceeding seeking, inter alia, to compel the trustee to file a judicial settlement [*2]of the SNT. The trustee moved by order to show cause for an order determining the amount of the SNT's corpus that was needed to satisfy any existing Medicaid liens. In response, respondent sought an order determining that, inter alia, any Medicaid liens against the SNT had been fully satisfied and discharged, and that she was therefore entitled to the remainder of the SNT corpus. Respondent Cayuga County Department of Social Services (DSS), which represented respondent New York State Office of the Medicaid Inspector General, argued that the existing Medicaid lien on the SNT was substantially greater than the remaining trust corpus. Several months later, respondent served a judicial subpoena duces tecum on DSS seeking, inter alia, the production of documents necessary to determine the amounts paid for all treatment provided to her brother from 1989 until his death. DSS moved to quash the subpoena.
Supreme Court conducted a hearing to ascertain the value of the alleged Medicaid lien during which DSS submitted, in relevant part, a historical claim detail report (CDR), which listed the expenditures made for health care provided to respondent's brother from 1996 to 2016. DSS sought to have the CDR admitted as a business record via the certification of an employee of the New York State Department of Health (SDOH), Office of Health Insurance Programs. Respondent objected, arguing that the CDR could not be admitted as a business record because the certification provided by DSS failed to establish the proper foundation. The court overruled the objection and admitted the CDR in evidence.
Following the hearing, the court determined that DSS had an existing Medicaid lien against the SNT in an amount exceeding the value of the trust corpus, and directed the trustee—after first paying certain other expenses—to pay DSS the remaining balance of the SNT in full settlement and satisfaction of the Medicaid lien. In light of that determination, the court denied as moot DSS's motion to quash the judicial subpoena duces tecum. Respondent now appeals from the ensuing order.
Contrary to respondent's contention, we conclude that the court properly determined that there was an existing Medicaid lien on the SNT. It is well settled that an SNT established under 42 USC § 1396p (d) (4) (A) and Social Services Law § 366 (2) (b) (2) (iii) (A), grants the State "a right to recover the total Medicaid paid on behalf of a [disabled] individual. There is no temporal limitation. The sole, though substantial, stated limitation on the State's recovery is the existence of remaining assets in the [SNT] upon the beneficiary's death. If the assets are available, according to the words of the statute the State may recover the total amount of benefits paid throughout the beneficiary's lifetime" (Matter of Abraham XX., 11 NY3d 429, 436 [2008]). "The Medicaid SNT reflects a policy decision to balance the needs of the severely disabled and the State's need for funds to sustain the system" (id. at 437).
Here, we conclude that the SNT, established pursuant to federal and state law, specifically contemplated that the State could potentially recoup some of its Medicaid expenditures upon the death of respondent's brother. Its plain language stated that DSS could recover, upon the death of respondent's brother, "the lesser of (1) the total amount of Medicaid payments made on behalf of [respondent's brother] for services that were provided, to the extent required by law; or (2) the entire balance of the [t]rust [e]state" (emphasis added). Thus, the terms of the SNT and the relevant statutes demonstrate that DSS was entitled to a Medicaid lien for the total Medicaid expenditures paid on behalf of respondent's brother up to the amount of the SNT's corpus at the time his death (see id. at 436-437; see generally 42 USC § 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [2] [iii] [A]).
We reject respondent's contention that the Section 104-b lien was the only lien against the SNT and that, because it had already been satisfied, DSS could not recover any of the remaining SNT corpus. "A Medicaid lien pursuant to Social Services Law § 104-b on the proceeds of a settlement in a personal injury action must be satisfied before the funds may be transferred to a[n] [SNT]" (Link v Town of Smithtown, 267 AD2d 284, 284 [2d Dept 1999] [emphasis added]; see Calvanese v Calvanese, 93 NY2d 111, 115-116 [1999]; Cricchio v Pennisi, 90 NY2d 296, 302-303 [1997]). Because the Section 104-b lien had to be satisfied before creation of the SNT, DSS is not precluded from seeking upon the death of respondent's brother repayment of Medicaid expenditures made on his behalf after the creation of the SNT. Indeed, to accept respondent's argument, we would have to ignore the plain text of the SNT, which expressly contemplates the existence of a Medicaid lien. Such a position would vitiate the entire purpose of the SNT and the "bargain struck" between the State and respondent's brother in [*3]creating the SNT (Abraham XX., 11 NY3d at 436).
We agree with respondent, however, that the court erred in admitting the CDR as a business record under CPLR 4518. A document may be admitted as a business record upon proof that "it was made in the regular course of any business and . . . it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter" (CPLR 4518 [a]; see generally People v Kennedy, 68 NY2d 569, 579-580 [1986]). "[A] proper foundation may . . . be provided where an entity shows that it routinely relies upon the business records of another entity in the performance of its own business" (West Val. Fire Dist. No. 1 v Village of Springville, 294 AD2d 949, 950 [4th Dept 2002]), and where the entity "is familiar with the practices of [the] company that produced the records at issue" (People v Brown, 13 NY3d 332, 341 [2009]; see generally People v Cratsley, 86 NY2d 81, 90-91 [1995]).
" '[T]he mere filing of [data] received from other entities, even if [it is] retained in the regular course of business, is insufficient to qualify [it] as [a] business[] record' " (Cratsley, 86 NY2d at 90).
Here, as noted, DSS sought to lay the requisite foundation for admission of the CDR as a business record by way of the certification of an SDOH employee (see CPLR 2307, 4518 [c]). The certification stated, in relevant part, "that the annexed [CDR] is a true and accurate copy of the original [CDR], which was generated from data contained in the Adjudicated Claim File. The Adjudicated Claim File, a comprehensive computer data file, is created, maintained and transported in the form of magnetic media to the [SDOH] by CSRA, Inc. [(CSRA)], a fiscal intermediary which contracts with the [SDOH]." Thus, the certification clearly states that the data sought to be admitted in evidence via the CDR was "created" and "maintained" by CSRA, a third-party entity. The SDOH employee who certified the CDR did not, however, work for CSRA, i.e., the entrant of the information upon which the CDR is based. Further, although the certification stated that the CDR was "produced" in the regular course of SDOH's business and that the data entries were "transported" to SDOH "at or about the time that such data [was] received and incorporated into the Adjudicated Claim File," the SDOH employee did not establish that CSRA, as "entrant[,] was under a business duty to obtain and record the" data reflected in the Adjudicated Claim File (People v Jones, 158 AD3d 1103, 1104 [4th Dept 2018] [internal quotation marks omitted]), or that he was familiar with the record-keeping practices of CSRA and that SDOH generally relied upon CSRA's records (cf. Brown, 13 NY3d at 341). At best, the certification demonstrated only that SDOH filed and retained the data created and maintained by CSRA, which fails to establish the requisite foundation (see Cratsley, 86 NY2d at 90). We therefore conclude that the CDR should not have been admitted in evidence at the hearing pursuant to CPLR 4518 based on the SDOH employee's certification.
Inasmuch as the CDR was the critical piece of evidence establishing the value of the Medicaid lien—particularly that it exceeded the value of the remaining SNT corpus—we cannot say that admitting the CDR was harmless error (see generally West Val. Fire Dist. No. 1, 294 AD2d at 950). Thus, we modify the order by vacating the 12th and 17th adjudicatory paragraphs and the fourth and fifth ordering paragraphs, and we remit the matter to Supreme Court for a new hearing to determine the amount of the Medicaid lien only.
Given our determination, DSS's motion to quash respondent's judicial subpoena duces tecum is no longer moot. We therefore further modify the order by vacating the first ordering paragraph, and we also remit the matter to Supreme Court for a determination of that motion on the merits (see Weiss v Zellar Homes, Ltd., 169 AD3d 1491, 1495 [4th Dept 2019]).
We have reviewed respondent's remaining contentions and conclude that none warrants further modification or reversal of the order.
Entered: November 13, 2020
Mark W. Bennett
Clerk of the Court