HSBC Bank USA v Gifford (2024 NY Slip Op 00678)

HSBC Bank USA v Gifford

2024 NY Slip Op 00678

Decided on February 08, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 08, 2024

Before: Webber, J.P., Gesmer, Kennedy, Rosado, Michael, JJ. 

Index No. 36287/19 Appeal No. 1368 Case No. 2022-04800 

[*1]HSBC Bank USA etc., Plaintiff-Respondent,
v
David Gifford, Defendant-Appellant, Deutsche Bank National Trust Company etc., et al., Defendants.

Michael Kennedy Karlson, New York, for appellant.
McCalla Raymer Leibert Pierce LLC, New York (Adam Weiss of counsel), for respondent.

Order, Supreme Court, Bronx County (Doris M. Gonzalez, J.), entered on or about September 29, 2022, which, in this mortgage foreclosure action, denied defendant's motion to dismiss the complaint pursuant to CPLR 3211(a)(5) and (a)(8), modified, on the law, to the extent of remanding the matter for further proceedings on the constitutional question arising under CPLR 203(h), and otherwise affirmed, without costs.
This mortgage foreclosure action was commenced by plaintiff, HSBC Bank USA, N.A. (HSBC) in 2019, following dismissal of a prior foreclosure action brought by HSBC against defendant David Gifford (HSBC Bank USA, N.A. v Gifford, 161 AD3d 618 [1st Dept 2018]). Gifford seeks to dismiss this action on grounds that he was never properly served, based on the description of the person served in the affidavit of service, and on the ground that the action is time-barred because the loan was accelerated at the time plaintiff filed the prior foreclosure action in 2013 and plaintiff has failed to prove that it effectively deaccelerated the loan. Following determination of Gifford's motion to dismiss, the legislature enacted CPLR 203(h), part of the Foreclosure Abuse Prevention Act (FAPA), (L 2022, ch 821 [eff Dec. 30, 2022]), and, on appeal, the parties address whether FAPA applies and requires dismissal.
On January 30, 2007, defendant executed a note in the principal amount of $440,000 in favor of Fremont Investment and Loan, in conjunction with a loan to him in the same amount and granted a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Fremont, securing 4238 Bronxwood Avenue in the Bronx (the Property). The loan was assigned to plaintiff, HSBC on August 11, 2008. The complaint alleges that, on April 1, 2009, defendant defaulted on his payments due under the loan.
On January 4, 2013, HSBC filed a foreclosure action against Gifford in Bronx County Supreme Court. Paragraph 10 of the complaint stated that HSBC had elected to accelerate the loan. The court granted HSBC a judgment; on appeal, this Court reversed, dismissing the action based on HSBC's failure to prove proper service of the required RPAPL 1304 default notice (HSBC Bank USA, N.A. v Gifford, 161 AD3d at 618).
HSBC commenced this foreclosure action on June 6, 2019, approximately six years and four months after it commenced the prior foreclosure action. The complaint alleged that Gifford defaulted on the note and/or mortgage "by failing to pay the amount currently due for July 1, 2013 and each subsequent payment that has come due thereafter."
On June 20, 2019, HSBC filed an affidavit of service stating that:
"on June 14, 2019 at 7:10PM at 4238 Bronxwood Avenue, 2nd Floor, Bronx, NY, 10466," the process server, Feisal Abderahman, served the summons, complaint, and RPAPL 1303 notice "on David Gifford" in two ways. First, "[b]y delivering thereat a copy of each to "JOHN DOE" (REFUSED NAME), RELATIVE (REFUSED RELATION) . . . . That person was also asked [*2]by deponent whether said premises was the defendant's dwelling place/usual place of abode and the reply was affirmative." Second, by mailing a copy of the same to defendant at the same address via United States Postal Service.
The affidavit stated that the individual served was a black male with black hair, roughly 45 years of age, 6'3", and weighing roughly 230 lbs.
On November 14, 2019, Gifford moved to dismiss pursuant to CPLR 3211(a)(5) and (a)(8), CPLR 213(4), and CPLR 3212. Gifford argued that the court lacked personal jurisdiction over him because the process server delivered papers to a person who was 6'3", not 5'11," as he is. Gifford argued that the action was time-barred because the loan was accelerated on January 4, 2013, by the filing of the complaint in the prior action.
In a supporting affidavit, Gifford attested that the premises were his home; that his height is 5'11," and that "no one else matching the description of the alleged service recipient was present on the second floor at the Subject Property at any time in June of 2019." He denied that the process server delivered any documents to him personally and stated that he "may have been in transit back from work" at the time of the alleged service. He also furnished a copy of his driver's license showing his height of 5'11".
In opposition, HSBC argued that Gifford did not refute the affidavit of service. It also argued that it filed within the six-year limitation period because, although the entire loan had been accelerated in 2013 through the filing of its complaint, HSBC mailed a letter on or about June 12, 2018, that deaccelerated the loan.
Supreme Court denied defendant's motion, finding that the affidavit of service created a presumption of proper service and that defendant had failed to rebut it, stating that, other than defendant's height, the affidavit "clearly describe[d] the defendant," and as the affidavit relied on substituted service, "as to the presence of a person matching that description being at the premises." Thus, Supreme Court concluded that defendant failed to raise an issue of fact to rebut the affidavit. The court also found that the loan had been validly deaccelerated by service of the June 12, 2018 letter within six years of commencement of the prior foreclosure action, and therefore, this action was timely.
Defendant's motion to dismiss for lack of personal jurisdiction was properly denied without the need for a traverse hearing. An affidavit of service constitutes prima facie evidence of proper service and the "mere denial of receipt of service is 'insufficient to rebut the presumption of proper service created by a properly-executed affidavit of service' " (Matter of de Sanchez, 57 AD3d 452, 454 [1st Dept 2008], quoting De La Barrera v Handler, 290 AD2d 476, 477 [2d Dept 2002]; see Lantern Endowment Partners, LP v Bluefin Servicing Ltd., 200 AD3d 577 [1st Dept 2021]). While defendant averred that no one matching the description of the alleged [*3]service recipient provided in the affidavit of service was present at the location at the time of alleged service, he did not rebut the process server's statement that the summons and complaint were handed to a person of suitable age (see CPLR 308[2]; JP Morgan Chase Bank v Dennis, 166 AD3d 530 [1st Dept 2018] [the affidavit of service filed by the plaintiff was prima facie evidence that the defendant was properly served and the defendant's conclusory assertion that she was never served with the summons and complaint was insufficient to rebut the presumption]; Nationstar Mtge., LLC v Kamil, 155 AD3d 966 [2d Dept 2017] [the defendant did not rebut the process server's sworn allegation that a person fitting the physical description of a male relative was present at the subject property at the time and accepted service on behalf of the defendant]).
Defendant's assertion that he is shorter than the person described in the affidavit of service is insufficient to rebut the presumption as he does not dispute that the weight, hair color, and skin color and other descriptions in the affidavit, match his description (Lantern Endowment Partners, LP v Bluefin Servicing Ltd., 200 AD3d at 577; Ocwen Loan Servicing, LLC v Ali, 180 AD3d 591, 591 [1st Dept 2020], lv denied 36 NY3d 1046 [2021]). Moreover, such minor discrepancy is insufficient to warrant a hearing (see US Bank N.A. v Cherubin, 141 AD3d 514, 516 [2d Dept 2016]).
The cases relied upon by the dissent in support of a traverse hearing are distinguishable. In NYCTL 1998-1 Trust & Bank of N.Y. v Rabinowitz (7 AD3d 459, 460 [1st Dept 2004]), the affidavit of service avers that substituted service upon the defendant was effectuated by service upon the defendant's son Randy Rabinowitz, a 26-year-old white male approximately 5'10" and weighing about 175 lbs. The defendant rebutted by stating that "although he has no son, he has a daughter named Randy Rabinowitz, who is a 45-year-old, full-time resident of Washington, D.C.," 5' 4" and weighing 125 lbs. The "[d]efendant further averred that he knew of no person in his residence on the day in question fitting the description contained in the affidavit of service."
In Fuentes v Espinal (153 AD3d 500, 501 [2d Dept 2017]), a Second Department case, the affidavit of service established that the process server delivered the papers "at the defendant's residence to 'Jane Doe,' who was identified as a 'co-tenant,' a person of suitable age and discretion, and whose appearance was described as female, brown skin, black hair, aged 17 to 21 years old, 100 to 130 pounds, and 5'4" to 5'8" in height. The defendant rebutted the process server's affidavit through his specific averments that, at the time of the purported service, he did not reside with anyone" with the description stated in the affidavit; that he lived with his 91-year-old grandmother and his 28-year-old sister. He described his sister as having red hair, 28 years old, and weighing "well in excess of 130 [*4]lbs" at the time of the purported service. "Moreover, the defendant averred that his sister was temporarily residing with his parents at a different address because she had recently given birth" (id. at 501).
Thus, in the cases relied upon by the dissent, the defendants provided sworn, nonconclusory denials containing specific facts to refute the statements in the affidavit of service of the process server. That is not the case here. Contrary to the dissent's assertion, Gifford's statements cannot be said to be unequivocal or specifically addressed to the statements in the affidavit of service. While Gifford stated that no one matching the description of the alleged service recipient was present on the second floor of the property at any time in June of 2019, he did not specifically rebut that the summons and complaint were handed to an individual approximately 45 years old, i.e., a person of suitable age. Nor did he deny that this personal delivery was followed by the requisite mailing. Defendant's conclusory denial of service failed to rebut the presumption of service created by the process server's affidavit (see U.S. Bank N.A. v Martinez, 139 AD3d 548, 549 [1st Dept 2016]).
As for the timeliness of this action, defendant demonstrated prima facie that the action was commenced more than six years after plaintiff commenced a prior foreclosure action in 2013, which accelerated the loan. As stated above, the prior foreclosure action was dismissed in 2018. The dismissal was based on plaintiff's failure to comply with RPAPL 1304 (161 AD3d at 618), not on a failure to serve a default notice constituting a precondition for acceleration, and there was no express determination that the loan was not validly accelerated. Accordingly, plaintiff's argument that the dismissal of the prior foreclosure action also resulted in the loan not having been validly accelerated in 2013 is unavailing (see e.g. Deutsche Bank Natl. Trust Co. v Nelson, 183 AD3d 557 [2d Dept 2020]).
Plaintiff argues this action is timely because it deaccelerated the loan through a letter mailed to defendant in June 2018. Plaintiff submitted an affidavit of an employee of its loan servicer, Nationstar Mortgage, LLC (Nationstar), who attested that it was Nationstar's regular practice to obtain a proof of mailing at or near the time of the mailing and that the creation of records such as the letter in question was "triggered only upon the actual mailing of the notice." Once created, such records were maintained by Nationstar in the course of its regularly conducted business activities, indicating that the records formed part of Nationstar's own records. Accordingly, the records she annexed were records evidencing the mailing of the letter and not simply evidencing the letter itself, which are admissible to prove that the letter was mailed (see Bank of Am., N.A. v Brannon, 156 AD3d 1, 8 [1st Dept 2017]).
However, the added subdivision (h) to CPLR 203, provides that once a cause of action [*5]to foreclose a mortgage or for a money judgment under the note accrues, "no party may . . . unilaterally waive, postpone, cancel, toll, revive, or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period prescribed by law to commence an action and to interpose the claim, unless expressly prescribed by statute." Thus, if CPLR 203(h) applies to this previously commenced action, the 2018 letter purporting to restart the running of the statute of limitations on a loan is ineffective, regardless of whether or not the letter was pretextual.
Plaintiff challenges the constitutionality of CPLR 203(h) contending that retroactive application of FAPA would violate the Due Process and Takings Clauses of the United States Constitution, as well as the New York State Constitution. Because of the vitality of the constitutional issues, plaintiff is directed to serve notice on the Attorney General under CPLR 1012(b)(1) and file proof of service, and the matter is remanded for further proceedings on the constitutional question (see Ronen, LLC v Bais Hamedrash Ateres Chaim Hanipoly, 221 AD3d 741, 745 [2d Dept 2023]; see also 45-47-49 Eighth Ave. LLC v Conti, 220 AD3d 473 [1st Dept 2023]).
All concur except Gesmer J. who dissents in part in a memorandum as follows:

Gesmer, J. (dissenting in part)
 

I disagree with my colleagues in the majority that defendant failed to rebut the affidavit of service and would remand for a traverse hearing. Accordingly, I respectfully dissent.
A traverse hearing is required where defendant's sworn, nonconclusory statement raises a question of fact as to whether service was made (HSBC Bank USA, N.A. v Russo, 205 AD3d 647 [1st Dept 2022]; Kasowitz, Benson, Torres & Friedman, LLP v Cao, 105 AD3d 521 [1st Dept 2015]; NYCTL 1998-1 Trust & Bank of N.Y. v Rabinowitz, 7 AD3d 459, 460 [1st Dept 2004]). Here, the process server claims to have served the summons and complaint to "John Doe," a person of suitable age and discretion who claimed to be a relative of defendant. The process server claimed to have made service on this person at 4238 Bronxwood Avenue, 2nd floor.
In opposition, defendant submits an affidavit which "rebutted the process server's affidavit through his specific averments" (Fuentes v Espinal, 153 AD3d 500, 501 [2d Dept 2017]). Specifically, he asserts that the process server's allegations are "false," that "to [his] own knowledge. . . no one else matching the description of the alleged service recipient was present on the second floor at the Subject Property at any time in June of 2019," and that the person allegedly served is "non-existent" (see NYCTL 1998-1 Trust, 7 AD3d at 460 [the defendant's sworn statement that no one matching the description of the person alleged to have been served was present in his residence at the relevant time constituted a nonconclusory denial of service sufficient rebut the prima facie showing of service and requiring a traverse hearing[*6]]). Furthermore, to the extent that plaintiff and the order on appeal suggest that the person allegedly served was defendant, defendant swears that the process server did not deliver any documents to him personally, and that, in any event he is 5'11" and the person the process server claims to have served was 6'3" (see HSBC Bank USA, N.A. v Russo, 205 AD3d at 647).[FN1]
To support its position, the majority relies on cases that are entirely distinguishable from this case. JP Morgan Chase Bank v Dennis (166 AD3d 530 [1st Dept 2018]) involved personal, rather than substitute service. Accordingly, it does not address the sufficiency of a foreclosure defendant's rebuttal of substitute service. Nationstar Mtge., LLC v Kamil (155 AD3d 966 [2d Dept 2017]) is a Second Department case, and is accordingly not binding upon this Court. To the extent that the majority relies on it, it is distinguishable because, there, the defendant failed to "rebut the process server's sworn allegation that a person fitting the physical description" of the person allegedly served was present at defendant's residence (id. at 967). Here, defendant states unequivocally that no one matching the description of the person allegedly served was present at defendant's residence at the time the process server claimed to have delivered the summons and complaint (see NYCTL 1998-1 Trust, 7 AD3d at 460).Furthermore, despite the motion court's speculation that the person served matched defendant's general description aside from his height, the court recognized that it would have been improper to base determination of the motion on such a finding without a hearing, since "plaintiff relies on substituted service" and had not submitted a sworn statement by anyone with personal knowledge claiming that the person served was defendant (see De Zego v Donald F. Bruhn, M.D., P.C., 67 NY2d 875 [1986][where the plaintiffs' affiant only claimed to have served defendant personally, Appellate Division properly declined to consider whether other methods of service were accomplished]). Accordingly, I would find defendant's nonconclusory statements denying service sufficient to require a traverse hearing.
Since I would hold that the motion court must conduct a traverse hearing, I would not reach the constitutional issues plaintiff raises as to the application of the Foreclosure Abuse Prevention Act (FAPA). To the extent that personal jurisdiction over defendant is established, however, I agree with my colleagues in the majority that the motion court should decide the constitutional issues once the Attorney General has been given notice pursuant to CPLR 1012(b)(1).
Similarly, because I believe a traverse hearing is required, I would not reach the issue of defendant's statute of limitations defense. Were I to do so, I would agree with the majority to the extent that they find that plaintiff has raised issues of fact requiring a trial that are sufficient to defeat defendant's request for dismissal based on the [*7]statute of limitations. Specifically, I note that defendant does not deny receipt of the deacceleration letter from plaintiff's loan servicer.
However, I disagree with the majority that we can find on this record that the document proffered by plaintiff's affiant constitutes non-hearsay evidence of mailing because it "formed part of Nationstar's own records." As the Court of Appeals has explained,
"the mere filing of papers received from other entities, even if they are retained in the regular course of business, is insufficient to qualify the documents as business records. . . . [since] such papers simply are not made in the regular course of business of the recipient, who is in no position to provide the necessary foundation testimony as to the regularity and timeliness of their preparation or the source of information contained in the records. . . . Nor, generally, would the recipient be aware whether the information was imparted by one under a business duty to report to the entrant" (People v Cratsley, 86 NY2d 81, 90 [1995] [internal quotation marks omitted]).
There are narrow circumstances under which such records may qualify for the business records exception to the hearsay rule (CPLR 4518[a]). For example, an assignee seeking to enforce a loan may rely on an original loan file prepared by its assignor under certain conditions, including when it relies on such records in the regular course of its business (see Residential Credit Sols., Inc. v Gould, 171 AD3d 638, 643 [1st Dept 2019]). Similarly, in Cratsley, the Court of Appeals held that a report prepared by a psychologist not employed by the receiving entity qualified as a business record. It did so based on a finding that the report was prepared for the receiving entity in conformity with the receiving entity's procedures, and it complied with applicable statutory and regulatory requirements for such reports with which the employee of the receiving entity who testified at trial was familiar (Cratsley, 86 NY2d at 90). Here, plaintiff has failed to demonstrate that the record at issue qualifies for the business records exception to the rule against hearsay. The "tracking information" document attached to plaintiff's opposition papers was not prepared by plaintiff or its loan servicer. Rather, it bears the logo of another entity, LenderLive, LLC. However, the affidavit of an employee of plaintiff's loan servicer does not even mention this entity or explain the relationship, if any, between plaintiff or its loan servicer and LenderLive, LLC. Nor does plaintiff's affiant claim to be familiar with LenderLive's recordkeeping practices. Accordingly, this document does not qualify as a business record based on the record before us.
For the reasons discussed above, I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 8, 2024

Footnotes

Footnote 1: Contrary to the majority's statement, defendant did not base his motion on an argument that "that the court lacked personal jurisdiction over him because the process server delivered papers to a person who was 6'3", not 5'11," as he is." Rather, defendant disputed the veracity of the affidavit of service in its entirety. Both defendant's affidavit and his attorney's affirmation stated that they asserted the fact of defendant's height only in anticipation of a possible argument by plaintiff that the person described in the affidavit of service was defendant.