[868 NYS2d 258]

Joseph Corsi et al., Appellants, v Town of Bedford, Respondent, et al., Defendants.

Second Department, November 25, 2008

### APPEARANCES OF COUNSEL

*Russell J. Ippolito*, Tarrytown, for appellants.

*Keane & Beane, P.C.*, White Plains (*Nancy Tagliafierro* of counsel), for respondent.

### OPINION OF THE COURT

SPOLZINO, J.

This appeal presents the unusual situation in which a

municipality is required to defend against an adverse possession claim. The critical issue, however, is whether several aerial photographs of the subject property were properly admitted into evidence. We conclude that one set of such photographs was properly admitted and that those photographs were sufficient to support the Supreme Court's determination, at the conclusion of this nonjury trial, that the plaintiffs had failed to establish their adverse possession of a portion of the property. We, therefore, affirm the judgment insofar as appealed from.

The plaintiffs purchased a residence on Dwight Lane in the Town of Bedford in 1993. In the furtherance of its open space preservation program, the Town purchased a much larger parcel, adjoining the plaintiffs' residence, on December 10, 2004. The plaintiffs commenced this action in June 2005, alleging that they had adversely possessed a small piece of the larger parcel since 1994. Thus, although an adverse possession claim will not normally lie against property held by a governmental entity in its governmental capacity (see *Gallo v City of New York,* 51 AD3d 630 [2008]; *Kings Park Yacht Club, Inc. v State of New York,* 26 AD3d 357 [2006]), the plaintiffs could prevail by demonstrating that their claim had ripened into title prior to December 10, 2004.

Since the plaintiffs' claim was not based upon a written instrument, they were required to demonstrate that the subject property was either "usually cultivated or improved" or "protected by a substantial enclosure" (RPAPL 522 [1], [2]) for the 10-year statutory period (see *Gore v Cambareri,* 14 AD3d 650 [2005]; *Casini v Sea Gate Assn.,* 262 AD2d 593, 594 [1999]). The plaintiffs undertook to satisfy this burden by testifying that they had improved the subject property by cutting trees, leveling the area, erecting a retaining wall, and installing an irrigation system. Their testimony was supported by the testimony of several neighbors as to their recollections of the status of the plaintiffs' property in 1994 and several photographs showing work being done on the property. Although the photographs were undated, the plaintiffs asserted that they could be placed within the relevant time frame by reference to the ages of the plaintiffs' children as shown in the photographs.

The Town's defense centered upon aerial photographs of the property, purportedly taken in 1995 and 1996, together with the testimony of an expert in analyzing aerial photographs that enlargements of those photographs showed none of the improvements alleged by the plaintiffs to have been made by that time.

The Supreme Court found the aerial photographs to be convincing and, on that basis, dismissed the bulk of the plaintiffs' claim, awarding judgment in their favor only with respect to a very small portion of the property that they had claimed.

The standard by which we consider an appeal from a judgment entered upon a decision after a nonjury trial is well established.

> "As this case was tried without a jury, this Court's authority is as broad as that of the trial court, and this Court may render a judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983])" (*State Farm Mut. Auto. Ins. Co. v Stack*, 55 AD3d 594, 595 [2008]; *see Chambers v McIntyre*, 5 AD3d 344, 344 [2004]; *Warm v State of New York*, 308 AD2d 534, 535-536 [2003]).

Since the 1995 aerial photographs, together with the expert's testimony as to what the photographs demonstrated, provided a sufficient basis for the Supreme Court's determination, the judgment must be affirmed insofar as appealed from if, contrary to the plaintiffs' argument, the 1995 photographs were properly admitted into evidence. We conclude that the 1995 aerial photograph and enlargements were properly admitted, but that the 1996 aerial photograph and enlargements were not.

Initially, the Town argues that the plaintiffs did not timely object to the introduction of the 1995 aerial photograph into evidence, so as to preserve for appellate review the argument that they make here. While it is true that the plaintiffs' counsel declined to object when that photograph was first offered, he did argue, in the colloquy that followed, that the photograph did not constitute a business record. It cannot be said, therefore, that the plaintiffs failed to alert the Supreme Court to their concerns with respect to the admissibility of the 1995 photograph and its enlargements, as it must before their argument will be considered to be unpreserved (*see* CPLR 4017; *Gallegos v Elite Model Mgt. Corp.*, 28 AD3d 50, 59 [2005]).

A photograph is generally admissible as a depiction of a fact in issue upon proof of its accuracy by the photographer or upon testimony of one with personal knowledge that the photograph accurately represents that which it purports to depict (*see People v Patterson*, 93 NY2d 80, 84 [1999]; *People v Byrnes*, 33 NY2d

343, 347 [1974]). Aerial photographs are admissible on the same basis (*see Jarvis v Long Is. R.R. Co.,* 50 Misc 2d 769, 774 [1965], *affd* 25 AD2d 617 [1966]). Here, however, the Town apparently was unable to present a witness who had the requisite knowledge of the property in 1995 or 1996. As a result, the Town offered the aerial photographs as hearsay statements admissible under the business records exception to the rule against hearsay. It is on this basis that we consider their admissibility.

The business records exception to the hearsay rule, as codified in New York, provides that

> "[a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter" (CPLR 4518 [a]).

To these statutory requirements, the case law has added that "not only must the entrant be under a business duty to record the event, but the informant must be under a contemporaneous business duty to report the occurrence to the entrant as well" (*Matter of Leon RR,* 48 NY2d 117, 122 [1979]).

In order to qualify under this exception to the rule against hearsay, of course, an aerial photograph must first qualify as hearsay, i.e., as " 'a statement made out of court . . . offered for the truth of the fact asserted in the statement' " (*People v Romero,* 78 NY2d 355, 361 [1991], quoting Richardson, Evidence § 200, at 176 [Prince 10th ed]). The photographs in issue here certainly were offered for the truth of their content, i.e., the state of facts they depicted. It is also clear that they are out-of-court statements, although not, perhaps, in the traditional sense.

If the advent of digital photography has demonstrated anything, it is that a photograph is, at its functional, rather than artistic, level simply a recording of data. In the case of digital photography, photosensitive material in the digital camera captures the image and converts it into a series of numbers which may be stored in computer files, translated back into tonal values and printed (*see* Columbia Encyclopedia, Still Photography: Digital Technology [6th ed, Columbia University

Press 2008], available at http://www.encyclopedia.com/doc/1E1-photogrph.html [accessed July 29, 2008]). A nondigital photograph simply captures its data in a different way, by recording the image of an object through the action of light on photosensitive paper (*see id.*, Photographic Processing, available at http://www.encyclopedia.com/doc/1E1-photgrpro.html [accessed July 29, 2008]). In either case, the photograph is merely a representation of the recorded data and, hence, a statement within the meaning of the hearsay rule.

The Town offered the 1995 aerial photograph on the basis of the testimony of Paul Gisondo, an associate planner with the Westchester County Department of Planning. Gisondo testified that the County Planning Department causes aerial photographs of the County to be taken in the regular course of its business every five or six years and that the photograph offered into evidence was taken in April 1995 as part of a series of such photographs taken for the County in that year. This testimony was sufficient to establish, as the statute requires, that the 1995 aerial photograph was made in the regular course of the County's business, that it was the regular course of such business to make the photograph, and that the recording was contemporaneous with the report.

The plaintiffs argue, however, that because Gisondo did not take the 1995 aerial photograph himself, his testimony did not establish that the record was produced by a person under a business duty to report, as *Matter of Leon RR* (48 NY2d at 122) requires. Gisondo testified to the process by which the County had caused the aerial photographs to be taken every five or six years by explaining, in relation to an aerial photograph taken in 2000, that the company performing the work for the County was under a contractual duty to produce photographs according to certain specifications. On this basis, the circumstances under which the 1995 photograph was produced provided sufficient indicia of reliability that it was properly admitted into evidence.

We recently had occasion to consider, in *Hochhauser v Electric Ins. Co.* (46 AD3d 174 [2007]), whether a contractual duty can satisfy the requirement imposed by *Matter of Leon RR* (48 NY2d 117 [1979]) and *Johnson v Lutz* (253 NY 124 [1930]). At issue in *Hochhauser* was whether the duty of an insured to cooperate, as required by the terms of the insurance policy, was a sufficient basis upon which to admit a statement made to the insurer's investigator by the insured, who was not the claimant. We found that it was not, reasoning that the critical requirement for

admissibility under the business records exception, inherent trustworthiness or indicia of reliability, was lacking. As Justice McCarthy wrote for the Court,

> "despite potential consequences which may befall an insured who fails to provide accurate and truthful information to, or to cooperate with, an insurer, the insured's statement to the insurance investigator regarding the plaintiff's residence was not made under circumstances which create a high probability that the statement was truthful" (*Hochhauser v Electric Ins. Co.,* 46 AD3d at 183).

*Hochhauser* reflects the determination of the Court of Appeals that

> "[t]he essence of the business records exception to the hearsay rule is that 'records systematically made for the conduct of a business . . . are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant's obligation is to have them truthful and accurate for purposes of the conduct of the enterprise' " (*People v Guidice,* 83 NY2d 630, 635 [1994], quoting *People v Kennedy,* 68 NY2d 569, 579 [1986]; *see People v Rawlins,* 10 NY3d 136, 150 [2008]).

Applying this standard here, the 1995 aerial photograph qualifies as an admissible business record.

Although the photographer here was, like the insured in *Hochhauser,* acting pursuant to a contractual duty, rather than a statutory or employment duty, the circumstances are critically different. Unlike the insured in *Hochhauser,* who was responding to the insurer's inquiry with respect to a particular event, the photograph at issue here was produced as part of a series of such photographs taken on a regular basis, thus establishing the "routineness" that "tends to guarantee truthfulness because of the absence of motivation to falsify" (*Ed Guth Realty v Gingold,* 34 NY2d 440, 451 [1974]).

In addition, the 1995 aerial photograph, unlike the statements at issue in *Hochhauser,* was related to the County's regular fulfillment of its governmental responsibilities (*see People v DiSalvo,* 284 AD2d 547, 548 [2001]). Thus, in this regard, the aerial photograph at issue here is akin not to the statements of the insured in *Hochhauser,* but to the psychological evaluation found to be admissible in *People v Cratsley* (86 NY2d 81, 88-92

[1995]), and the DNA report found to be admissible in *People v Brown* (50 AD3d 1154, 1155 [2008]). In each case, the statement was relied upon in the regular course of the business of the agency for which it had been prepared for purposes unrelated to the litigation in which it was offered. Since these circumstances provide the indicia of reliability necessary to bring the 1995 aerial photograph within the business records exception to the rule against hearsay, the photograph was properly admitted. The fact that the record was provided by a third party is thus of no consequence (*see Merrill Lynch Bus. Fin. Servs. Inc. v Trataros Constr., Inc.,* 30 AD3d 336, 337 [2006]).

The plaintiffs' objections to the enlargements of the 1995 aerial photograph that followed it into evidence as exhibits F through K also were properly rejected by the Supreme Court, without the need for testimony as to the process by which the enlargements were generated, on the basis of the testimony of John Jeffrey Osterman, the Town's Director of Planning, that the enlargements were identical to the original except for scale (*see People v Pobliner,* 32 NY2d 356, 370 [1973]; *People v Rodriguez,* 264 AD2d 690, 691 [1999]).

■ The foundation for the 1996 aerial photograph, however, was insufficient. That foundation consisted simply of the testimony of the Town's aerial photography expert that he had "located" the photograph from "a listing of what's available to us from various people who fly." There was no testimony as to the manner in which the photograph was taken or the purpose for which it was taken, other than that it was taken "speculatively hoping to be able to sell this over the years." Such testimony, while perhaps supporting the inference that the 1996 aerial photograph was taken in the regular course of business, was insufficient to establish that the provider of the photograph was under any business duty to do so. As a result, the 1996 aerial photograph and enlargements made from it should not have been admitted into evidence (*see Read v Ellenville Natl. Bank,* 20 AD3d 408, 409-410 [2005]).

■ Despite the improper admission of the 1996 aerial photograph and its enlargements, however, the 1995 aerial photograph and enlargements provide a sufficient evidentiary basis for the Supreme Court's determination. It is undisputed that the 1995 aerial photograph was taken in April 1995. The Town's expert aerial photograph analyst testified that the enlargements show only a few of the improvements claimed by the plaintiffs to have been made by that time. Although that

testimony was challenged on cross-examination, it was not shaken to the point that the witness's credibility was lost. Thus, although the plaintiffs and their neighbors had a different recollection as to the condition of the plaintiffs' property in December 1994, the record provides evidence which supports the determination made by the Supreme Court. We, therefore, affirm the judgment insofar as appealed from, entered on that basis (*see Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d at 499; *Chambers v McIntyre,* 5 AD3d at 344; *Warm v State of New York,* 308 AD2d at 535-536).

MASTRO, J.P., BALKIN and LEVENTHAL, JJ., concur.

Ordered that the judgment is affirmed insofar as appealed from, with costs.