OPINION OF THE COURT
Thomas F. Whelan, J.
It is ordered that this motion (No. 001) by the plaintiff for, among other things, summary judgment, caption amendment and the appointment of a referee to compute, is granted in its entirety, and it is further ordered that the proposed order submitted by the plaintiff, as modified, is signed simultaneously herewith.
This foreclosure action was commenced by filing on November 22, 2013. The matter was reassigned to this part pursuant to Administrative Order No. 27-17, dated February 28, 2017, and submitted for decision on March 3, 2017. In essence, on February 10, 2003, Elayne Morga, borrowed $132,000 from the plaintiff’s predecessor-in-interest and executed a promissory note and mortgage. Since January 1, 2010, this defendant has failed to pay the monthly installments due and owing. Only the defendant, Elayne Morga, has answered in this action. In her answer, defendant alleged nine affirmative defenses.
In the moving papers, plaintiff addresses its burden of proof on this summary judgment motion and refutes the affirmative defenses of the answer. With regard to compliance with RPAPL 1304, plaintiff has established its prima facie burden with the submission of the affidavit of Jacob Rudd, sworn to on June 8, 2016, the document executive specialist employed by Nation-star Mortgage LLC (Nationstar), the servicer of the loan for the plaintiff. He explained Nationstar’s practice and procedures as follows:
“I have personal knowledge of the facts contained in this Affidavit by virtue of my position at Nation-star, my familiarity with Nationstar’s processes and based upon my review and analysis of the relevant business records and other documents of Na-tionstar referenced and attached herein. While many of Nationstar’s processes are automated, the information manually entered by Nationstar em *258 ployees relating to loans on those systems is based upon personal knowledge of the information and entered into the system at or near the time the knowledge was acquired. These computerized records are created and maintained in the regular course of its business as a loan servicer and Na-tionstar relies on the records in the ordinary course to conduct its business as a loan servicer.”
The affidavit was based upon his personal knowledge of the business records maintained in the regular course of Nation-star’s business as a loan servicer and, as he swore to, Nation-star’s reliance on the loan servicing records in the ordinary course to conduct its business as a loan servicer. He explained that the pre-action 90-day notice was mailed to defendant by regular and certified mail on December 12, 2012. He also attached to his affidavit, not only copies of the 90-day notice, but the required proof of filing statement to the New York State Banking Department, pursuant to RPAPL 1306, which is offered as proof to the state agency that the mailing occurred on December 12, 2012, pursuant to the step one filing requirement. Therefore, plaintiff has satisfied its prima facie burden on this summary judgment motion (see HSBC Bank USA, N.A. v Espinal, 137 AD3d 1079 [2d Dept 2016]).
It was thus incumbent upon the answering defendant to submit proof sufficient to raise a genuine question of fact rebutting the plaintiff’s prima facie showing or in support of the affirmative defenses asserted in her answer or otherwise available to her (see Flagstar Bank v Bellafiore, 94 AD3d 1044 [2d Dept 2012]; Grogg v South Rd. Assoc., L.P., 74 AD3d 1021 [2d Dept 2010]; Wells Fargo Bank v Das Karla, 71 AD3d 1006 [2d Dept 2010]; Washington Mut. Bank, F.A. v O’Connor, 63 AD3d 832 [2d Dept 2009]; JP Morgan Chase Bank, N.A. v Agnello, 62 AD3d 662 [2d Dept 2009]; Aames Funding Corp. v Houston, 44 AD3d 692 [2d Dept 2007]).
Notably, affirmative defenses predicated upon legal conclusions that are not substantiated with allegations of fact are subject to dismissal (see CPLR 3013, 3018 [b]; Katz v Miller, 120 AD3d 768 [2d Dept 2014]; Becher v Feller, 64 AD3d 672, 677 [2d Dept 2009]; Cohen Fashion Opt., Inc. v V & M Opt., Inc., 51 AD3d 619 [2d Dept 2008]). Where a defendant fails to oppose some or all matters advanced on a motion for summary judgment, the facts as alleged in the movant’s papers may be deemed admitted as there is, in effect, a concession that no *259 question of fact exists (see Kuehne & Nagel v Baiden, 36 NY2d 539 [1975]; see also Madeline D'Anthony Enters., Inc. v Sokolowsky, 101 AD3d 606 [1st Dept 2012]; Argent Mtge. Co., LLC v Mentesana, 79 AD3d 1079 [2d Dept 2010]). In addition, the failure to raise pleaded affirmative defenses in opposition to a motion for summary judgment renders those defenses abandoned and thus without any efficacy (see New York Commercial Bank v J. Realty F Rockaway, Ltd., 108 AD3d 756 [2d Dept 2013]; Starkman v City of Long Beach, 106 AD3d 1076 [2d Dept 2013]).
In opposition, defendant raises only three claims, an un-pleaded challenge to the capacity of the plaintiff to utilize the courts of the State of New York, standing to commence the action (first and third affirmative defenses), and lack of compliance with the provisions of RPAPL 1304 against the 90-day notice (fourth affirmative defense). Therefore, the court dismisses the second, fifth, sixth, seventh, eighth and ninth affirmative defenses, as abandoned.
The court rejects the challenge to the claimed lack of capacity to sue, since it is not set forth as an affirmative defense in the answer and as such, is waived pursuant to CPLR 3211 (e). It is clear in the Second Department that capacity to sue and standing are distinct legal concepts (see Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239 [2d Dept 2007]). In any event, plaintiff’s ability to enforce the note and mortgage is protected by Banking Law §§ 200 and 200-a (see First Wis. Trust Co. v Hakimian, 237 AD2d 249 [2d Dept 1997]).
The court rejects the first and third affirmative defenses (standing). One of the various methods that standing may be established is by due proof that the plaintiff or its custodial agent was in possession of the note prior to the commencement of the action. The production of such proof is sufficient to establish, prima facie, the plaintiffs possession of the requisite standing to prosecute its claims for foreclosure and sale (see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355 [2015], supra; U.S. Bank N.A. v Ehrenfeld, 144 AD3d 893 [2d Dept 2016]; JP-Morgan Chase Bank, N.A. v Weinberger, 142 AD3d 643 [2d Dept 2016]; Citimortgage, Inc. v Klein, 140 AD3d 913 [2d Dept 2016]; U.S. Bank N.A. v Godwin, 137 AD3d 1260 [2d Dept 2016]; Wells Fargo Bank, N.A. v Joseph, 137 AD3d 896 [2d Dept 2016]; Emigrant Bank v Larizza, 129 AD3d 904 [2015], supra, Deutsche Bank Natl. Trust Co. v Whalen, 107 AD3d 931 [2d Dept 2013]).
*260 Additionally, the plaintiff’s attachment of a duly indorsed mortgage note to its complaint or to the certificate of merit required by CPLR 3012-b, coupled with an affidavit in which it alleges that it had possession of the note prior to commencement of the action, has been held to constitute due proof of the plaintiff’s possession of the note prior to the commencement of the action and thus its standing to prosecute its claim for foreclosure and sale (see JPMorgan Chase Bank, N.A. v Venture, 148 AD3d 1269 [3d Dept 2017]; Deutsche Bank Trust Co. Ams. v Garrison, 147 AD3d 725 [2d Dept 2017]; Deutsche Bank Natl. Trust Co. v Logan, 146 AD3d 861 [2d Dept 2017]; Deutsche Bank Natl. Trust Co. v Umeh, 145 AD3d 497 [1st Dept 2016]; Nationstar Mtge., LLC v Weisblum, 143 AD3d 866 [2d Dept 2016]; Deutsche Bank Natl. Trust Co. v Webster, 142 AD3d 636 [2d Dept 2016]; JPMorgan Chase Bank, N.A. v Weinberger, 142 AD3d 643 [2016], supra; Federal Natl. Mtge. Assn, v Yakaputz II, Inc., 141 AD3d 506, 507 [2d Dept 2016]; JPMorgan Chase Bank, N.A. v Kobee, 140 AD3d 1622 [4th Dept 2016]; JPMorgan Chase Bank, N.A. v Roseman, 137 AD3d 1222 [2d Dept 2016]; Deutsche Bank Natl. Trust Co. v Leigh, 137 AD3d 841 [2d Dept 2016]; Nationstar Mtge., LLC v Catizone, 127 AD3d 1151 [2d Dept 2015]).
Here, plaintiff also demonstrated possession of the note prior to the commencement of the action (see Hudson City Sav. Bank v Genuth, 148 AD3d 687 [2d Dept 2017]; HSBC Bank USA, N.A. v Espinal, 137 AD3d 1079 [2016], supra; LNV Corp. v Francois, 134 AD3d 1071 [2d Dept 2015]).
That leaves the challenges to the RPAPL 1304 pre-action 90-day notice (fourth affirmative defense). In seeking to decipher the challenge, as set forth in the four-page paragraph 18 of the August 24, 2016 affirmation of Ivan E. Guerrero, Esq., it appears that the focus is on the need for an affidavit of service of the 90-day notice from someone with personal knowledge. This court rejects such a contention based upon Court of Appeals and Appellate Division determinations that discuss the business records exception to the hearsay rule (see CPLR 4518).
The issue presented here, concerning what constitutes compliance with the 90-day notice requirement of RPAPL 1304, has been the subject of ever-growing and often confusing litigation throughout the state. Therefore, the court will take the opportunity to carefully address the complex issues presented.
The defendant relies upon case law that speaks to the need for an affidavit of service evincing proper service of the RPAPL *261 1304 90-day pre-action notice. More recently, in CitiMortgage, Inc. v Pappas (147 AD3d 900 [2d Dept 2017]), the Second Department has held, in part, that proof of mailing of a RPAPL 1304 notice to a borrower must be established by an affidavit of service or proof of mailing by the post office. The holding, in pertinent part states, “the legislature implicitly provided the means for the plaintiff to demonstrate its compliance with the statute, i.e., by submission of the proof of mailing by the post office” (147 AD3d at 901).[1]
Legislative History
A review of the statute, as adopted in 2008 (L 2008, ch 472, § 2, eff Sept. 1, 2008), reveals no such “implicit” legislative direction. The original enactment, in part, stated in section 1, “the lender or mortgage loan servicer shall give notice to the borrower.” In pertinent part section 2 stated,
“[s]uch notice shall be sent by the lender or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, to the residence which is the subject of the mortgage. Notice is considered given as of the date it is mailed.”
The statute has undergone three revisions since 2008, with no significant changes to the language as set forth above, except to add “an assignee” as an additional party who is responsible for giving the 90-day notice under section 1 and to add to section 2, as of December 20, 2016, in pertinent part, the following: “[s]uch notice shall be sent by the lender, as-signee or mortgage loan servicer in a separate envelope from any other mailing or notice.”
A review of the entire legislative bill jacket for the enactment of RPAPL 1304 in 2008, that is, Laws of 2008, chapter 472, § 2, effective September 1, 2008 (2008 NY Senate Bill S8143-A), which contains numerous letters in support or in partial opposition, reveals not a single reference to the need or recommendation for an affidavit of service or “proof of mailing by the post office.” Repeatedly, each letter or memorandum in support simply mentions that the notice is to be sent. For example, the new section will “require a notice be sent to home *262 owners ninety days prior to the initiation of the lawsuit” (Letter from Empire Justice Ctr., July 29, 2008, Bill Jacket, L 2008, ch 472 at 35). In fact, the Introducer’s Memorandum in Support by State Senate Sponsor Hugh T. Farley states that the new provision, section 2 of the bill, would “require lenders and mortgage loan servicers to send out a notice to borrowers who took out a subprime or nontraditional loan between January 1, 2003 and September 1, 2008, at least 90 days before they may commence legal action against the borrower” (Bill Jacket, L 2008, ch 472 at 7).
When the legislature wanted to rely upon the filing of a proof of service, it did so in the very next section of the bill, section 3. As explained by the Farley memorandum, section 3 of the bill added a new CPLR provision, rule 3408, requiring a court “to schedule a settlement conference within 60 days of when the proof of service of the complaint is filed with the county clerk’s office” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 472 at 7).[2]
In discussing the pre-foreclosure notice, the Farley memorandum notes that “this bill would require lenders and mortgage loan servicers to provide a pre-foreclosure notice to borrowers with subprime loans at least 90 days before a legal action may be commenced against the borrower” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 472 at 10).
The Memorandum in Support from the Real Property Law section of the New York State Bar Association notes the following:
“Lenders and loan servicers argue that they already send out several notices before commencing legal action. The pre-foreclosure notice requirement should not then impose a material burden on lenders and servicers and by directing borrowers to counseling agencies, the pre-foreclosure notice may *263 help both the borrower and the lender to reach an early resolution” (Bill Jacket, L 2008, ch 472 at 27).
No mention is made anywhere in the Bill Jacket to the “submission of the proof of mailing by the post office,” nor is mention made as to the need for an affidavit of service. In fact, no mention is made as to “service,” just “shall give notice” or “shall be sent.” There is no service requirement, as with RPAPL 1303 (“shall be delivered with the summons and complaint”). In effect, the Pappas case, eight years after the enactment of RPAPL 1304, engrafts a new requirement of a need for a “proof of mailing by the post office” (147 AD3d at 901) or an affidavit of service, and then dismisses the case based upon this judicial engraftment and, apparently, upon a loan servicer’s lack of insight into the “implicit” meaning of the legislature.[3]
Business Records Rule
The Pappas case does acknowledge that “mailing may be proven by documents meeting the requirements of the business records exception to the rule against hearsay under CPLR 4518” (147 AD3d at 901) and cites to various cases, including Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co. (25 NY3d 498, 508 [2015], affg 114 AD3d 33 [2d Dept 2013]).
The Second Department holding in Viviane Etienne admitted that some of its prior holdings added a requirement to a plaintiff’s prima facie burden by stating that the plaintiff failed to demonstrate the admissibility of their billing records under the business records exception to the hearsay rule, and that such “constituted an anomaly, a jurisprudential drift from this Court’s well-established precedent” (114 AD3d at 44). In essence, the case law which was overruled had rejected affidavits of third-party billing servicers who did not possess personal knowledge of the plaintiff’s business practices and procedures for admissibility under the business records exception to the hearsay rule.
In fact, the dissent (Miller and Hall, JJ.) found that the “affidavit failed to demonstrate that he had any personal knowledge of the plaintiff’s record-keeping procedures and the affidavit was otherwise insufficient to lay a foundation for the admission of the Attending Physician Verifications under the business records exception to the rule against hearsay” (id. at 53 [citations omitted]). The Second Department in Viviane *264 Etienne did not require the plaintiffs “submission of the proof of mailing by the post office.”
The Court of Appeals noted that “[p]roof evincing the mailing must be presented in admissible form, including, where it is applicable, meeting the business records exception to the hearsay rule” (25 NY3d at 501). The Court of Appeals explained that the third-party billing company incorporated documents from the medical provider into its own records and relied upon them in the performance of its business. So, importantly, the third-party billing company “ ‘incorporated plaintiffs medical records into its own and relied upon them’ ” (id. at 503, quoting 31 Misc 3d 21, 25 [App Term, 2d Dept 2011]).
The high court acknowledged the need to “submit proof of mailing through evidence in admissible form” and “[s]uch proof may include the verification of treatment form and/or an affidavit from a person or entity (1) with knowledge of the claim and how it was sent to the insurer or (2) who has relied upon the forms in the performance of their business” (25 NY3d at 507). Therefore, based, in part, on that reliance, the documents met the business records exception to the hearsay rule. The dissent (Stein and Read, JJ.) disagreed since the third-party billing servicer “had no personal knowledge of plaintiffs record-keeping procedures or practices in creating the documents based on which he compiled those forms” (25 NY3d at 514).
Therefore, the Court of Appeals did not simply rely upon the need for an affidavit from one with personal knowledge, where third-party records are relied upon in the performance of one’s business. That outcome is not new and is based upon the reliability of the records.
No Need for Personal Knowledge
It is well settled that a loan servicer may testify as to payment defaults and other matters relevant to a foreclosing plaintiffs prima facie case on records it maintains in the regular course of business (see Pennymac Holdings, LLC v Tomanelli, 139 AD3d 688 [2d Dept 2016]; Deutsche Bank Natl. Trust Co. v Naughton, 137 AD3d 1199 [2d Dept 2016]; Deutsche Bank Natl. Trust Co. v Abdan, 131 AD3d 1001 [2d Dept 2015]; Wells Fargo Bank, N.A. v Arias, 121 AD3d 973 [2d Dept 2014]; see also Citibank, NA v Abrams, 144 AD3d 1212 [3d Dept 2016]; Deutsche Bank Natl. Trust Co. v Monica, 131 AD3d 737 [3d Dept 2015]; HSBC Bank USA, N.A. v Sage, 112 AD3d 1126 [3d Dept 2013]; Aames Capital Corp. v Ford, 294 AD2d 134 [1st Dept 2002]).
*265 This includes records and materials generated by predecessors-in-interest (see Deutsche Bank Natl. Trust Co. v Monica, 131 AD3d 737 [2015], supra; Portfolio Recovery Assoc., LLC v Lall, 127 AD3d 576 [1st Dept 2015]; Landmark Capital Invs., Inc. v Li-Shan Wang, 94 AD3d 418 [1st Dept 2012]; State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293 [3d Dept 2012]). Moreover, a transferee or assignee of an original lender or intermediary predecessor may rely upon the business records of the original lender to establish its claims for recovery of amounts due from the debtor so long as the plaintiff establishes that it relied upon those records in the regular course of its business (see Everhome Mtge. Co. v Pettit, 135 AD3d 1054 [3d Dept 2016]; Landmark Capital Invs., Inc. v Li-Shan Wang, 94 AD3d 418 [2012], supra; see also Portfolio Recovery Assoc., LLC v Lall, 127 AD3d 576 [2015], supra).[4]
These results are predicated upon CPLR 4518 (a) which does not require a person to have personal knowledge of each of the facts asserted in the affidavit of merit put before the court as evidence of the plaintiff’s standing or its compliance with notice requirements and/or the defendant’s default in payment.
As noted by the Court of Appeals in Viviane Etienne (25 NY3d at 508), “[c]ertain affidavits and documents submitted in support of a motion for summary judgment may be deemed admissible where those documents meet the requirements of the business records exception to the rule against hearsay under CPLR 4518” (citations omitted). In fact, in Citigroup v Kopelowitz (147 AD3d 1014 [2d Dept 2017]), which was decided by the Second Department one week after Pappas, the Court held:
“There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as the plaintiff satisfies the admissibility requirements of CPLR 4518 (a), and the records themselves actually evince the facts for which they are relied upon” (id. at 1015 [citations omitted]).
The records relied upon in Citigroup v Kopelowitz, “themselves actually evinced the facts underlying the appellants’ default” (id.).
*266 “As with other hearsay exceptions, the business records exception grew out of considerations of necessity and trustworthiness—the necessity for alternatives to permit large and small businesses to prove debts by their records of account, and the unusual degree of trustworthiness and reliability of such records owing to the fact that they were kept regularly, systematically, routinely and contemporaneously” (People v Kennedy 68 NY2d 569, 579-580 [1986], citing 5 Wigmore, Evidence §§ 1421, 1422, 1546 [Chadbourn rev 1974], and Note, Business Records Rule: Repeated Target of Legal Reform, 36 Brooklyn L Rev 241).
“The element of unusual reliability is supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation” {id., citing McCormick, Evidence § 306 [Cleary 3d ed]).
“The essence of the business records exception to the hearsay rule is that records systematically made for the conduct of a business as a business are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant’s obligation is to have them truthful and accurate for purposes of the conduct of the enterprise” {id., citing Williams v Alexander, 309 NY 283, 286 [1955]).
These concepts constitute the foundational elements of CPLR 4518 (a), as the statute requires
“that the record be made in the regular course of business—essentially, that it reflect a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business; second, that it be the regular course of such business to make the record (a double requirement of regularity)—essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record; and third, that the record be made at or about the time of the event being recorded . . . [so] that recollection be fairly accurate and the habit or routine of making the entries assured” {id. at 579-580; see also One Step Up, Ltd. v Webster Bus. Credit Corp., 87 AD3d 1 [1st Dept 2011]).
*267 The key to admissibility of a business record is thus that it carries the indicia of reliability ordinarily associated with business records (see People v Cratsley, 86 NY2d 81, 91 [1995]; One Step Up, Ltd. v Webster Bus. Credit Corp., 87 AD3d 1, 11 [2011], supra). As noted by the Second Department in Hochhauser v Electric Ins. Co. (46 AD3d 174, 179 [2d Dept 2007]), “[t]he basis of the business records exception to the hearsay rule is the trustworthiness of the document.”
In Corsi v Town of Bedford (58 AD3d 225, 231 [2d Dept 2008], lv denied 12 NY3d 714 [2009]), the Second Department held that certain aerial photographs, taken by a third-party vendor, qualified as admissible business records, due to “the ‘routineness’ that ‘tends to guarantee truthfulness because of the absence of motivation to falsify’ ” (quoting Ed Guth Realty v Gingold, 34 NY2d 440, 451 [1974]). Importantly, Corsi (at 232), concluded that “ [t] he fact that the record was provided by a third party is thus of no consequence.”
“While ‘the mere filing of papers received from other entities, even if they are retained in the regular course of business, is insufficient to qualify the documents as business records’ (People v Cratsley, 86 NY2d 81, 90 [1995] [internal quotation marks and citation omitted]), such records are nonetheless admissible ‘if the recipient can establish personal knowledge of the maker’s business practices and procedures, or that the records provided by the maker were incorporated into the recipient’s own records or routinely relied upon by the recipient in its business’ ” (Deutsche Bank Natl. Trust Co. v Monica, 131 AD3d 737, 739 [2015], supra [emphasis added], quoting State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293, 1296 [2012], supra', see also People v DiSalvo, 284 AD2d 547, 548 [2d Dept 2001] [“The dump tickets and print-out were routinely relied upon by the County in making its invoicing determinations”]; Matter of Carothers v GEICO Indem. Co., 79 AD3d 864, 864-865 [2d Dept 2010] [“although a proper foundation can be established by a recipient of records who does not have personal knowledge of the maker’s business practices and procedures, there must still be a showing that the recipient either incorporated the records into its own records or relied upon the records in its day-to-day operations”]).
*268 That there is no requirement that the affiant have personal knowledge of every entry is clear particularly where, as here, there is a business relationship between the entities entering and maintaining the records and those incorporating and relying upon them in the regular course of their business (see Citibank, NA v Abrams, 144 AD3d 1212, 1216 [3d Dept 2016] [“Polk was entitled to rely on the loan records in addressing the issue of possession, as CPLR 4518 (a) does not require a person to have personal knowledge”]; Deutsche Bank Natl. Trust Co. v Monica, 131 AD3d 737, 739 [2015], supra; HSBC Bank USA, N.A. v Sage, 112 AD3d 1126, 1127 [2013], supra; see Landmark Capital Invs., Inc. v Li-Shan Wang, 94 AD3d 418, 418-419 [2012], supra [“Plaintiff established its entitlement to judgment as a matter of law by relying in part on the original loan file prepared by its assignor. Plaintiff relied on these records in its regular course of its business”]).
Here, as stated in the affidavit of Jacob Rudd, “Nationstar relies on the [computer] records in the ordinary course to conduct its business as a loan servicer.” Therefore, plaintiff relied upon the records in its regular course of business and such reliability is key to its admissibility (see Corsi v Town of Bedford, 58 AD3d at 231-232; Matter of Carothers v GEICO Indem. Co., 79 AD3d at 865). Significantly, in People v Cratsley (86 NY2d at 90), the Court of Appeals explained that, “[w]hile not an . . . employee, [the declarant] was also not a complete outsider” to the enterprise.
The records of a predecessor loan servicer or owner cannot be deemed to be “a complete outsider” to the enterprise of loan servicing, of the very same loan. Mortgage loan services are licensed and regulated under Banking Law § 590 (1) (h), (i); and (5) (d) (“Mortgage loan servicers shall engage in the business of servicing mortgage loans in conformity with the provisions of this chapter, such rules and regulations as may be promulgated by the superintendent thereunder and all applicable federal laws and the rules and regulations promulgated thereunder”).
The state regulations put in place as part of the Mortgage Lending Reform Law of 2008 (L 2008, ch 472), set forth at 3 NYCRR part 419, addresses the business practices of a mortgage loan servicer, the obligations of servicers in their communications, transactions and general dealings with borrowers, and imposes certain recordkeeping and reporting requirements in order to enable the Superintendent of Finan *269 cial Services to monitor servicers’ conduct. In particular, section 419.13 describes the books and records that servicers are required to maintain as well as other reports the Superintendent may require for compliance purposes.
As recognized by the case law which authorizes the records of a predecessor-in-interest lender or servicer to be used as to matters relevant to a foreclosing plaintiffs prima facie case, the predecessor-in-interest was acting under a business duty to communicate accurately the assurance of accuracy that underlies the business records exception. Here, the records relied upon by the subsequent servicer in the course of its business possess the indicia of reliability or inherent trustworthiness necessary to allow them into evidence under the business records exception to the hearsay rule, particularly where, as here, “the records themselves actually evince the facts for which they are relied upon” (Citigroup v Kopelowitz, 147 AD3d at 1015).
As noted in People v Kennedy (68 NY2d at 579): “Courts must surely be sensitive to innovation and not seize on petty irregularities to exclude otherwise trustworthy evidence, but there is also the countervailing interest of fairness to the party against whom the records are admitted.”
In light of all of the above, it appears that portions of the Pappas holding, contrary to the Memorandum in Support from the Real Property Law section of the New York State Bar Association which addressed the 2008 legislation that enacted RPAPL 1304, do “impose a material burden on lenders and ser-vicers” (Bill Jacket, L 2008, ch 472 at 27) and “constitute[d] an anomaly, a jurisprudential drift from this Court’s well-established precedent” (Viviane Etienne, 114 AD3d at 44). Any other rule would ignore the fact that the negotiability of notes is in the national interest, that courts should encourage beneficial commercial transactions that keep commercial paper flowing and the law of secured transactions, which encourage the purchase of notes on the secondary mortgage market. In fact, Real Property Law § 275 (2) (a) expressly recognizes the commercial practice of lenders selling mortgages in the secondary market.
It is the court which must determine the threshold requirement for admissibility (see People v Kennedy, 68 NY2d at 576). Therefore, this court holds that the records relied upon, in the affidavit of Jacob Rudd, are admissible pursuant to the business records rule. Rejected as unmeritorious is defense *270 counsel’s claim that the plaintiff’s affidavit of merit is insufficient due to a lack of personal knowledge on the part of the affiant, who is an employee of the loan servicer of the plaintiff’s assignee.
In such a case, a presumption of receipt arises (see Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 25 NY3d 498 [2015], supra; Flagstar Bank, FSB v Mendoza, 139 AD3d 898 [2d Dept 2016]; see also American Tr. Ins. Co. v Lucas, 111 AD3d 423 [1st Dept 2013]; Triple Cities Constr. Co. v State of New York, 161 AD2d 868 [3d Dept 1990]).
Plaintiff has demonstrated that it strictly complied with the notice requirements of RPAPL 1304 (see 40 BP, LLC v Katatikarn; JP Morgan Chase Bank, N.A. v Schott, 130 AD3d 875 [2d Dept 2015]; PHH Mtge. Corp. v Israel, 120 AD3d 1329 [2d Dept 2014]; Emigrant Mtge. Co., Inc. v Persad, 117 AD3d 676 [2d Dept 2014]; US Bank N.A. v Weinman, 2013 NY Slip Op 31277[U] [Sup Ct, Suffolk County 2013]). Defendant has failed to rebut the presumption of receipt of the RPAPL 1304 notice (see Grogg v South Rd. Assoc., L.P., 74 AD3d 1021 [2d Dept 2010]).
Therefore, the court grants plaintiff’s motion in its entirety and simultaneously signs the proposed order, as modified.

. When the appellate court did review the legislative history of RPAPL 1304 in Aurora Loan Servs., LLC v Weisblum (85 AD3d 95, 106-107 [2d Dept 2011]), it stated so in the decision (“[t]he legislative history noted . . . [t]he bill sponsor sought”).

. Two relevant principles of statutory construction must be considered. The first of such principles is that “ ‘a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact’ ” (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 363 at 525; see Gural v Drasner, 114 AD3d 25, 29-30 [1st Dept 2013]). The second is that an “ ‘inference must be drawn that what is omitted or not included was intended to be omitted and excluded’ ” (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394, quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 240 at 412; see Gural v Drasner).

. This court does not dispute the fact that an affidavit of service or even “proof of mailing by the post office” is an appropriate means of establishing proof of mailing, just that such is not legislatively mandated by RPAPL 1304.

. In fact, in 40 BP, LLC v Katatikam (147 AD3d 710, 711 [2d Dept 2017]), decided two weeks before the Pappas case, the court held that “the plaintiff established that its predecessor-in-interest complied with RPAPL 1304.”